PEOPLE ex rel. CALDWELL v. BOARD OF SUP'RS OF SARATOGA COUNTY.

(Supreme Court, Appellate Division, Third Department. November 15, 1899.)

1. COUNTIES—SUPERVISORS—SHERIFF'S BILL—SHERIFF'S FAILURE TO APPEAR.
   Where a sheriff had an opportunity to appear before the committee of the board of supervisors, to whom his bills were referred, and did so appear, and was apprised of the items that the committee proposed to disallow or reduce, and was asked to explain various items in his bills, and made no request for a hearing either before the committee or the full board, he cannot afterwards complain of not having been heard.

2. SAME—CONDUCT OF BUSINESS.
   Under Laws 1892, c. 686, § 10, authorizing the board of supervisors to pass rules regulating their business, the board have the power and authority to keep under their control, until final adjournment, all claims presented to them, and may reconsider their action thereon before a certificate of allowance has passed out of their hands.

3. SAME—PASSING BILLS—PROCEDURE—EVIDENCE.
   A committee of a board of supervisors, to which has been referred a sheriff's bills, in passing upon the same may rely on the knowledge of its individual members, and on information received from persons having knowledge of the subject, and are not bound to swear witnesses, if they can acquire information without so doing.

4. SAME—BOARDING PRISONERS—SHERIFF—RIGHT TO COMPENSATION.
   Under County Law, § 230 (Laws 1892, c. 686), making the expense necessarily incurred in the support of persons charged with or convicted of crime, and committed to the jail of the county, and the moneys neces-

sarily expended by any county officer in executing the duties of his office, in cases in which no specific compensation for such purposes is provided by law, county charges; and Code Civ. Proc. § 3280, providing that each public officer upon whom a duty is expressly imposed by law must execute the same without fee or reward, except where a fee or other compensation therefor is expressly allowed by law,—a sheriff is not entitled to compensation for services in looking after prisoners or feeding them, but only for the money actually expended.

5. SAME.
   Where a bill submitted by a sheriff for miscellaneous labor done, and for repairs made on the jail and court house, is not properly itemized, and it also appears that said labor and repairs were no expense to the sheriff, and that he was not required to do the same, it was properly disallowed by the board of supervisors.

6. SAME—COMPENSATION WHERE NO FEE IS PRESCRIBED.
   Where no fee is provided by law to a sheriff for certain services, and he makes no claim that he paid the amount charged, or any other sum, for the doing of such work, a charge therefor is properly disallowed.

7. SAME— ATTENDING SURROGATE'S COURT.
   Code Civ. Proc. § 3307, subd. 21, providing that a sheriff shall receive $3 per day for attending a term of court which he is required by law to attend, does not entitle a sheriff to compensation for attending sessions of the surrogate's court, as there is no law requiring him to attend said court, and hence a charge for such attendance is properly disallowed.

8. SAME—AUDIT OF ACCOUNT.
   Items of a sheriff's account which are of the same character may be grouped together and disallowed as a whole by the board of supervisors.

9. SHERIFF—ARRAIGNMENT OF PRISONERS.
   2 Rev. St. (9th Ed.) p. 1944, § 11, providing that the sheriff shall receive 37½ cents for receiving prisoners, and 37½ cents for discharging them, does not entitle a sheriff to a fee for merely arraigning prisoners, and hence a charge therefor is properly disallowed.

10. SAME—DISALLOWANCE OF CLAIM—CONSENT.
    Where a sheriff appeared before a committee of the board of supervisors, and, on being examined as to an item in his account, stated that he knew of no law for the charge, and that the committee could do as they pleased, the item was properly disallowed; the sheriff himself having practically consented to the disallowance.

11. SAME—CAR FARE OF PRISONERS.
    Car fare of prisoners in conveying them to prison or jail is not covered by the 10 cents a mile allowed the sheriff for traveling expenses, and a bill therefor should be allowed.

Certiorari by the people, on relation of Emmor J. Caldwell, against the board of supervisors of Saratoga county, to review the board's action in auditing his bills as sheriff of such county. Determination confirmed.

This is a proceeding to review by certiorari the action of the defendants in auditing certain bills of the relator. In the return to the writ made by the defendants, they have included as a part of their return the joint affidavit of the members of the committee of the board of supervisors to whom the accounts of the relator were referred for examination. The relator is the sheriff of the county of Saratoga, and the bills referred to are for the board of prisoners, and for services rendered and money expended by him as such sheriff. The bills in controversy are three in number, known as 41, 42, and 43. The defendants at the beginning of their session appointed some 20 different committees, among which was one for the examination of sheriff's, county clerk's, and district attorney's accounts, and to that committee the bills of the relator were referred. It would appear from their affidavit that they made inquiries as to the cost of the support of prisoners in other counties, as to the cost of board in boarding houses, and, to some extent, the cost of provisions, in mak-

ing their investigation as to what should be allowed the relator for the board of prisoners. As to some of the items, they claim to have had personal knowledge; and, as to the fees of the relator, they examined what purported to be a schedule of fees printed in pamphlet of the proceedings of preceding boards of supervisors. It would appear that they took up the several bills item by item, but, when making their report to the board of supervisors, they reported the amount allowed upon each bill, without stating separately and distinctly what specific items in such bills had been disallowed. It appears that the relator was before the committee, and was asked as to various items in his bills, and was apprised by them of the items which had been disallowed. He made no request to produce evidence as to such items. On the report being presented to the board of supervisors, it was laid over for two days, and then adopted. These proceedings were then instituted. In the petition for the writ of certiorari, the relator claimed that nothing was shown in the determination of said committee, or the said board of supervisors, as to what items were allowed or disallowed, and that the relator was not requested to, and did not, appear before said committee in regard to any of the items of said bills. Thereupon a resolution was unanimously passed by the board of supervisors reconsidering the audit of said bills, and referring them back to the committee. The relator was invited to appear before such committee, and asked to point out any item of said bills which was erroneously reduced or disallowed, but the relator refused to take part in such proceedings. Thereafter the committee again reported them to the board of supervisors, wherein they specifically set forth the items rejected by them in said relator's bills, whereupon such bills were again audited as before. The second audit appears to have been the same as the first, with the exception of 50 cents in bill No. 43. Among the rules adopted by the board of supervisors is one reading as follows: "The clerk shall withhold all scrip or certificates for claims audited by the board against the county, until after the final adjournment." And the return states "(a) that, during all of the session of said board of supervisors, it was a uniform and general rule of practice, which prevailed during the entire session of said board, which was followed at all times, that by unanimous consent any report or matter whatsoever that had been acted upon by said board could be brought up for review and reconsideration and acted upon for all purposes, the same as if no action whatever had been previously taken thereon, and that this rule has been a rule with the board of supervisors of Saratoga county for many years immediately preceding the present year." The principal item is contained in bill No. 41, being for the board of prisoners,—the amount claimed being $8,742.92; the amount allowed, $7,265.71. The other items disallowed, or the amounts thereof reduced, are as follows: "10 months' miscellaneous labor, painting jail, court house, tending boiler, superintending stone yard, etc., $36,—$360," disallowed; "10 months' cleaning jail, at $10,—$100," disallowed; "10 months' emptying buckets, at $10,—$100," disallowed; "43⅓ weeks' washing for prisoners, at $4,—$173.33," reduced to $86.66. And the following items in bill No. 42 were disallowed or reduced: "9 days' attendance at surrogate's court, at $3 per day for each day," disallowed; "96 arraignments of prisoners," allowed at 50 cents each instead of 75 cents each; "to 5 returns of jury lists," allowed at $2.50 each instead of $3 each; "10 calendars of prisoners for district attorney," allowed at $2.50 instead of $3. And the following items in bill No. 43 were disallowed or reduced in amount: "Paid cash for conveyance to drive 18 miles for Chief Hoy, myself, and Flannigan, $3.00," disallowed; "To prisoners' fare from Prescott to Ballston, $6.83," disallowed; "Pay for two meals for prisoners, 75 cents," 25 cents deducted from the 75 cents for each prisoner.

Argued before PARKER, P. J., and LANDON, HERRICK, PUT-NAM, and MERWIN, JJ.

Horace E. McKnight (J. W. Houghton, of counsel), for relator.
John H. Burke and James W. Verbeck, for defendants.

HERRICK, J. It is customary for boards of supervisors, and bodies of like character, to divide their membership into committees,

to whom is given the special charge of the various matters brought before them for examination, and report to the full board. These committees are the hands and eyes of the board itself. It would be utterly impossible for each and every member to make a special examination for himself of all the matters that are brought before the board, and of each item in bills presented to it. It is not only the customary way, but it is a legal way, of discharging their duties. The bills in question here were referred to the committee constituted for the purpose of examining such accounts. The return that was made to the writ herein makes the affidavit of the members of that committee as to what took place before it in relation to the relator's bills a part of the return, and I think such affidavit may be properly considered by us as a part of the return; and it is the only affidavit in these proceedings considered by me in arriving at my conclusions in this case.

The relator had an opportunity to appear before the committee, and in fact did so, before their report was presented to the board. He was apprised of the items that the committee proposed to disallow or reduce, and he was asked to explain various items in his bills. He appears to have made no further requests for a hearing before the committee. Neither did he ask to go before the full board for a hearing upon the bills. If he had desired to be heard, either in person or by counsel, or to produce witnesses, in relation to his claims, or any portion thereof, he should have made it known to the committee or to the board. He did neither, and cannot now complain of not having been heard. Auditing boards are not compelled to hunt up claimants, and bring them before them, to sustain their claims. It has heretofore been held, in the case of People v. Board of Sup'rs of Fulton Co., 74 Hun, 251, 26 N. Y. Supp. 610, that an allowance by a board of supervisors of a gross sum in a bill, instead of passing on the items thereof, is not a proper audit; that "a legal and proper auditing of an account requires an examination of the items of which it is composed, and the allowance or disallowance of them accordingly as they shall be found correctly or incorrectly charged both in fact and law." In this instance it appears that the committee did examine the relator's bills item by item, check off those items that they disallowed, and indicated the amounts to which others had been reduced; but in their report to the board they stated the whole amount at which the bill was audited, without indicating therein the specific items they had disallowed or reduced. The board then audited the amount reported by the committee. Assuming, but not deciding, that such an audit was not a compliance with the law, I think the later action of the board complied with it, and was legally taken. By section 10 of chapter 686 of the Laws of 1892, commonly called the "County Law," boards of supervisors are authorized to pass rules regulating the business of the board; and by the rule adopted by them, referred to in the statement of facts, they intended to keep under their control, until the final adjournment, all claims and bills presented to them, and it was within their power and authority, before adjourning, to reconsider their action upon any matter before them. The case of Osterhoudt

v. Rigney, 98 N. Y. 222, is not in conflict with these views. So far as it considered the question now before us, it simply held that a board of audit has no power or authority to audit or allow claims passed upon and rejected by a prior board. There is nothing in it to sustain the proposition that a board of audit cannot reconsider a claim passed upon by them, at the same session, and allow, reject, reduce, or in any way correct it, before the final adjournment of such board, and before a certificate of such allowance has passed out of their hands. In determining the amount to be awarded upon these claims, the committee had the right to rely upon the knowledge of its individual members, and upon the information they could get by inquiries of persons presumably having knowledge upon the subject; and this the committee investigating the relator's accounts appears to have done. It was not necessary for them to swear witnesses in order to gain the necessary information, if they could acquire satisfactory information without so doing. There is no particular method of procedure prescribed for boards of audit to take proof or obtain knowledge respecting the validity of claims presented to them for audit. It is the custom of such bodies to procure information from any quarter where it is obtainable, and they are at liberty to make use of their own knowledge, and such as they have acquired by observation and experience. People v. Board of Town Auditors, 74 Hun, 83, 26 N. Y. Supp. 122; People v. Vanderpoel, 35 App. Div. 73, 54 N. Y. Supp. 436.

The manner in which the examination of these claims was conducted, and the legality of their action in making the audit, thus being determined, we come to the consideration of the merits of the relator's claims, and as to whether the board erroneously disallowed or reduced the amount of any of the items of any of such claims. These items we will consider in the order above set forth.

First, as to the board of prisoners: The claim for that sets forth the name of each prisoner, the number of days he was confined in jail, the price charged for his board per day, and the aggregate charge for boarding him during the time of his confinement. The number of days in the aggregate was 20,344, and the amount charged is $8,747.92. It will be observed that this was at the rate of $3.01 per week for board, and the board has allowed board at the rate of $2.50 per week. This was a proper way of auditing, within the case of People v. Board of Sup'rs of Fulton Co., 74 Hun, 251, 26 N. Y. Supp. 610, where it is stated in relation to the duties of auditors as follows:

"They must pass upon the items, and should so discharge their duty in that regard that the relator will be able to know which items were allowed and which disallowed. It may not be necessary for the board, in their decision, to pass on each item of relator's bill separately. For instance, if they should disallow all 'turnkey's' fees and all 'tub' fees, it would be sufficient to so declare, without specifying each item. If they should allow the number of weeks' board claimed, but reduce the price, it would be sufficient to merely state the price per week allowed."

There is nothing in the case to show that the claim for board of prisoners was audited at an insufficient amount. The contention of the relator is that there was a contract between himself and

the board of supervisors by which he was to be paid at the rate of $3.01 per week for each prisoner confined in the jail; and he bases that contention upon the fact that years ago, during the incumbency of another person in the office of sheriff, a resolution was passed fixing the price to be paid for the board of prisoners at $3.01 per week, and such resolution had never been repealed, and that such action of the board of supervisors constituted a contract between the county and the sheriff to pay him that amount. I do not think that contention can prevail. Boards of supervisors possess only limited powers. They only have such authority as is expressly conferred upon them by statute, and such implied power as is necessary to carry into effect those powers expressly conferred, or such as are necessary to enable them to discharge the duties and liabilities imposed upon them. They have no power or authority to audit or allow any claim or bill against the county that is not a legal charge. They cannot be liberal or generous with the money of the people. They can only expend it to pay the county's legal debts or obligations. One of these debts or obligations is the expense of maintaining prisoners in jails. By section 230 of the county law (being chapter 686 of the Laws of 1892) what are county charges are enumerated, and, among others, the following:

(7) "The expense necessarily incurred in the support of persons charged with, or convicted of crime, and committed to the jail of the county." (9) "The moneys necessarily expended by any county officer in executing the duties of his office, in cases in which no specific compensation for such services is provided by law."

The county is chargeable with, and it is the duty, then, of the board of supervisors to audit and allow, the expenses necessarily incurred in the support of persons charged with or convicted of crime, and committed to the jail of the county. This means the money actually paid out. "Expense" means "that which is spent; money expended; cost." Worcest. Dict. The sheriff is by law made the custodian of the jail, and of the prisoners confined therein, and is entitled, under the county law, above quoted, to the moneys expended by him in executing his duties as such custodian; but he is entitled to no more. The board of supervisors has no power or authority to compensate him for his care and trouble in looking after the prisoners or in feeding them, but only for the money he has actually expended. Section 3280 of the Code of Civil Procedure provides that "each public officer, upon whom a duty is expressly imposed by law, must execute the same without fee or reward, except where a fee or other compensation therefor is expressly allowed by law." People v. Board of Town Auditors, 24 App. Div. 579, 49 N. Y. Supp. 525, affirmed in 156 N. Y. 689, 50 N. E. 1120. No fee or reward or other compensation is provided by law for the care or feeding of prisoners by the sheriff. The only provisions relating thereto are those above stated; that is, that the expenses necessarily incurred in discharging the duties of his office, where no specific compensation is provided, shall be 'a county charge, and provides that the expense incurred in the support of prisoners convicted of crime shall be a county charge. Such being the law, I think the board of supervisors had no power

to make a contract for the board of prisoners, with the sheriff, at a fixed sum, regardless of the expense. There is no pretense in this case, and there was none upon the argument, that the expense of supporting these prisoners amounted to the sum charged in the sheriff's bill,—no claim that it had cost him that amount. I am aware that for a long time it has been customary for boards of supervisors, all through the state, to allow sheriffs a weekly sum for the support of prisoners, without regard to what it has cost the sheriff to support them, but such a custom cannot prevail against what seems to me the plain reading of the statute. The provisions of section 3280 of the Code of Civil Procedure were adopted for the very purpose of cutting off gratuities to public officers, or compensation for services rendered by them where no compensation is expressly provided by law; it being intended to confine them to those fees, rewards, or compensation that the law expressly provides, and no other. The county law provides for the simple reimbursement to them of the moneys necessarily expended by them in discharge of their duties, where no compensation is provided. It must be assumed—although a somewhat violent assumption—that the board of supervisors, in auditing this claim for the board of prisoners at $2.50 per week, found that that was the amount of money that had been expended by the sheriff for the support of prisoners; it appearing that the members of the investigating committee claimed to have had some personal knowledge as to the cost of provisions, and had also made inquiries as to such cost, and as to the price of board in that locality. The audit of his claim for board at that amount does not appear to be one of which the relator can complain.

The next item disallowed is that for "10 months' miscellaneous labor, painting jail, court house, attending boiler, superintending stone yard, etc., $36,—$360." This bill was properly rejected, for a variety of reasons: First, it was not properly itemized; second, it does not appear to be an expense of the relator, because it will be observed that he has not charged a specific sum for each item of work done, but it is a charge of so much per month,—$36 for 10 months, making in all $360; and, third, it appears from the return that there is a committee of the board of supervisors upon county buildings, with authority and power to make all necessary repairs and improvements to the county buildings. It also appears from the return that there is a janitor, at a stated salary, to take care of the county clerk's office, court house, and grounds. There also appear to have been a variety of other reasons which moved the committee and the board of supervisors to disallow these items, which it is unnecessary to recapitulate here.

The next item rejected was, "10 months' cleaning jail, at $10,—$100." The return shows that this work was done by the prisoners in the jail, and there is no pretense or claim that the relator paid the amount charged, or any other sum, for the doing of this work, and it was therefore properly disallowed.

The next item, "10 months' emptying buckets, at $10,—$100." The return shows that such work was done by the prisoners in the jail, and there is no pretense that the relator either paid out any

money or incurred any indebtedness therefor, and it was likewise properly disallowed.

The next item is, "43⅓ weeks' washing for prisoners, at $4,—$173.33," reduced to $86.66. This item was reduced, as appears, from information very largely derived from the keeper of the jail, who informed the committee that the prisoners, as a rule, did all their own washing; that practically the only work done outside of the jail in connection with the washing of prisoners was heating water in the kitchen of the jailer's house, and passing it in for the use of the prisoners. Under these circumstances, it would seem that a very liberal allowance was made for this item. In reference to these several items for services rendered, it may be said, in addition to what has been already said, that the relator produced no receipts or vouchers for money paid, before the committee, nor did he offer to do so, although, as before stated, he was apprised by the committee what items of his bills had been disallowed or reduced, and he had an opportunity of making proof that the amounts claimed by him had actually been expended. The error of the relator seems to me to be that he has labored under the idea that he was entitled to compensation for services and work done by himself or his agents, whereas, as we have seen, he is only entitled to recover whatever has been necessarily expended by him in the discharge of his duties where no fee is provided by law.

The next item disallowed is in bill No. 42. Among the items set forth is the following: "Attendance at the surrogate's court on nine different days, at a charge of $3.00 per day." This is attempted to be justified under subdivision 21 of section 3307 of the Code of Civil Procedure, relating to sheriff's fees, reading as follows: "For attending a term of court, which he is required by law to attend, for each day, three dollars." It will be observed, he is only entitled to compensation for attending court when the law requires him to so attend. The relator has nowhere pointed out, neither have I been enabled upon my own investigation to find, any provision of law requiring sheriffs to attend sessions of the surrogate's court; and, in the absence of any such requirement, these items were properly disallowed. Under the authority of People v. Board of Sup'rs of Fulton Co., 74 Hun, 251–255, 26 N. Y. Supp. 610, it was proper to group all these items of the same character together, and disallow them as a whole.

The next item is for "96 arraignments of prisoners," allowed at 50 cents each, instead of 75 cents each. For these charges I find no authority in law whatever. This charge is attempted to be justified under that provision of the statute which entitles a sheriff to the sum 37½ cents for receiving prisoners, and 37½ cents for discharging them. 2 Rev. St. (9th Ed.) p. 1944, § 11. The theory is that when the prisoner is committed to the jail the sheriff becomes entitled to 37½ cents, and that, when he is brought into court after the report of the grand jury, he is then discharged from confinement under that commitment, whether he is indicted or not; that, if he is indicted, he is then discharged from confinement by virtue of the former commitment, and recommitted to jail under the indictment; and that the sheriff is en-

titled to his fee for such discharge, and also to his fee for receiving him under the new commitment. This construction, I think, is erroneous, and is a fictitious one. The statute means his final, actual discharge, and not a theoretical one. For merely arraigning prisoners there is no fee provided by statute, and the items were properly disallowed.

The next item, "Five returns of jury lists," allowed at $2.50 instead of $3 each; and "10 calendars for district attorney," allowed at $2.50 instead of $3 each. There is no statutory fee prescribed for either of these items, and it is not claimed that any expense was incurred by the sheriff therefor; and the board might very properly have entirely disallowed both items, instead of merely reducing the amount charged.

The following amounts in bill No. 43 were reduced or entirely disallowed: "Paid cash for conveyance to drive 18 miles for Chief Hoy, myself, and Flannigan, $3.00," disallowed. In the same bill appears an item for traveling 576 miles, at 10 cents per mile,—$57.60. Upon the relator's appearing before the committee and being examined as to this item, he stated that those "18 miles were included in the 576 miles charged, and that the committee could do as they saw fit about allowing the $3 for the conveyance; that he knew of no law for, it, and the committee could do as they pleased." It seems to me, therefore, that that item was properly disallowed. The relator himself practically consented to it before the committee.

The next item, "To prisoner's fare from Prescott to Ballston, $6.83." This, I think, was improperly disallowed. That was an expense incurred in the discharge of his duty, and is not covered by the 10 cents a mile allowed him for traveling expenses. That, I think, refers to his own personal traveling expenses, and does not include the expense for car fare in conveying convicts to prison, or persons accused of crime to jail.

The next item, "Paid for two meals for prisoners, 75 cents;" 25 cents deducted for each prisoner. This deduction, I think, was proper. The board of supervisors had passed a resolution allowing the sum of 25 cents to officers for meals furnished to prisoners while in their custody. The committee were also of the opinion that 25 cents was sufficient to allow for each meal, and, in the absence of proof that it had necessarily cost the relator more than that amount, I do not see how we can reverse the action of the board in that respect.

The only item improperly reduced or disallowed (being the one for $6.83) being so small in amount, compared with the total amount of relator's charges, I do not think we should reverse the action of the board for that reason, or change their audit, especially in view of the fact that the board has made allowances to him not sanctioned by law, to an amount largely in excess of the item improperly disallowed.

For these reasons the determination of the board of supervisors should be confirmed, with $50 costs and disbursements. All concur.