(January 19, 1904.)

## MOMBERT v. BANNOCK COUNTY.

[75 Pac. 239.]

BOARD OF PRISONERS—LIABILITY OF COUNTY—LIABILITY OF SHERIFF.

1. Where the statute provides that the "Sheriff must receive all persons committed to jail by competent authority and provide them with necessary food, clothing and bedding for which he shall be allowed a reasonable compensation to be determined by the board of commissioners," and that he "Shall be allowed in addition to his salary, as fixed by said board, the actual and necessary expenses for care of each prisoner confined in the county jail," it is held that an individual furnishing the sheriff with such board and supplies must look to the sheriff for his pay and cannot maintain his action for the value thereof against the county.

2. *Held, further,* that where the statute provides that the officer "Shall at the end of each quarter file with the clerk of the board of county commissioners a sworn statement, accompanied by proper vouchers, showing all expenses incurred and all fees received, which must be audited by the board as other accounts," a sheriff must file such vouchers before his claim therefor can be allowed.

(Syllabus by the court.)

STOCKSLAGER, J., dissents to paragraph 1 of syllabus.

APPEAL from District Court in and for Bannock County. Honorable Alfred Budge, Judge.

Plaintiff filed his claim with the board of commissioners of Bannock county for board furnished prisoners under contract with the sheriff and the commissioners rejected the claim. Plaintiff appealed to the district court, where he obtained a judgment for the amount claimed. From the judgment of the district court the county appealed. Reversed.

Attorney General John A. Bagley and J. J. Guheen, for Appellant.

This is an action upon an appeal from an order of the board of county commissioners of Bannock county, made at their January meeting, 1903, disallowing the claim of Joseph Mombert for $377.10, for meals furnished the prisoners in the Bannock county jail as set out in the claim of said Mombert, said claim being disallowed for the reason that the same was not a proper county charge, the sheriff of Bannock county having theretofore filed his bill for the board of said prisoners for the same time included in the bill of said Mombert. An appeal from the order of said board disallowing said bill was duly taken to the district court of the fifth judicial district, and upon a trial of said cause in said court the order of said board was reversed and canceled and said board was ordered and directed to allow said claim and cause a warrant of Bannock county to be issued and delivered to said Mombert in payment of said bill, which said judgment of the district court was duly entered May 13, 1903, from which judgment Bannock county now appeals to this court. The claim of Mombert is the complaint in this action and sets up an express contract with Martin D.

Rice, sheriff of Bannock county, for the furnishing of meals to the prisoners in the Bannock county jail at the express and agreed price of fifteen cents per meal, and said claim further alleges that said Martin D. Rice has not paid said amount of said claim ($377.10), or any part thereof. Said claim nowhere alleges wherein Bannock county authorized or contracted with said Mombert to furnish said meals at said price, or any price, or made any contract in relation to the same with said Mombert, or authorized anyone else to make such contract with said Mombert, either as the agent of said county or otherwise, and we respectfully submit that under such a showing upon the face of said claim the court should not have permitted, over the objection of the defendant, any evidence, other than the appeal and the records in said cause, to be received, which sought to bind Bannock county to pay Mombert for said meals. (*Board of County Commissioners of Atchison Co. v. Tomlinson,* 9 Kan. 168.) Plaintiff's contention is, and the court in its conclusions of law found, that the sheriff of Bannock county is the agent of said county in procuring said meals and board for prisoners confined in the county jail, and that the county is primarily liable to the plaintiff for the payment thereof. Under our laws we believe that the feeding of the prisoners and the furnishing of necessary food is as much an official duty of the sheriff as any other duty enjoined by law, and we do not think the county commissioners have any right to interfere with him in such duty except in a supervisory manner to see that he performs this duty properly and to allow him a reasonable compensation for the same. (1 Session Laws, Idaho Ter. 1864, p. 596, sec. 3; Idaho New Pen. Code, sec. 5885; Sess. Laws 1899, p. 118, subsec. 20; Sess. Laws 1891, p. 177, subsec. 20; New Idaho Pol. Code, par. 2, sec. 1764, said section having first been passed at the fifth session, Laws 1899, p. 406.) This identical question has been decided under similar statutes to those of Idaho by the supreme court of Kansas. (*Hendricks v. Board of County Commissioners of Chautauqua Co.,* 35 Kan. 483, 11 Pac. 450.) Plaintiff cannot recover on *quantum meruit* or implied contract. (*Hampton v. Board of County Commissioners of Logan Co.,* 4 Idaho, 646, 43 Pac. 324; *Argenti v. San Francisco,* 16 Cal. 255; 15 Am. & Eng. Ency. of Law,

1084; *Board of Commissioners v. Seawell,* 3 Okla. 281, 41 Pac. 592-594.) Persons contracting with such artificial creations of the law as municipal corporations and public officers are charged with notice of the character and constitution of the entity with which they deal. They know the law and know what are valid acts of such artificial persons. They contract at their peril. (*Murphy v. Napa Co.,* 20 Cal. 497; *Sharp v. Contra Costa Co.,* 34 Cal. 284; *Branahan v. Mayor etc. of San Jose,* 24 Cal. 585; *Kelly, Sheriff, v. Multnomah Co.,* 18 Or. 356, 22 Pac. 1110; *Roberts v. Commissioners of Pottawatomie Co.,* 10 Kan. 32.)

Thomas F. Terrell, for Respondent.

It is not contended by appellant that the ex-sheriff ever paid respondent for the board in question, or that Bannock county has ever paid any person for it. It is conceded that the claim made by the ex-sheriff against the county for this board was not accompanied by a voucher showing payment or any voucher. It therefore follows that the ex-sheriff has never presented a valid or legal claim to the board of county commissioners for the board in question, and as a matter of fact he never will, because he has never paid for such board, and therefore cannot present a legal claim for it. This being true, can Bannock county escape liability to the person who actually furnished the board, when the Political Code, section 1786, says that the value of such board is a proper county charge. The order made by the county commissioners on the sixteenth day of January, 1902, allowing the ex-sheriff forty-five cents per day for board for each prisoner confined in the county jail, regardless of what such board cost, is absolutely void. The county commissioners had no right to arbitrarily fix the amount to be allowed for the board of each prisoner without reference to what the actual expense of such keeping might be, nor in advance of the time when such expenses were incurred. (*People v. Board of Supervisors,* 45 App. Div. 42, 60 N. Y. Supp. 1126; *Board of Commissioners v. Barnes,* 123 Ind. 403, 24 N. E. 137; *Libby v. Board of Commissioners,* 38 Minn. 448, 38 N. W. 205; *Board of Commissioners v. Fullen,* 118 Ind. 158, 20 N. E. 771; *Fremont Co. v. Brandon,* 6 Idaho, 482, 54 Pac. 264; *Dunbar v. Board of Commissioners,*

5 Idaho, 407, 49 Pac. 409; *People v. Board of Supervisors,* 45 App. Div. 42, 60 N. Y. Supp. 1122; *People v. Board of Town Auditors,* 156 N. Y. 689, 50 N. E. 1120; *Ada County v. Gess,* 4 Idaho, 611, 43 Pac. 71; *Neville v. Solano County,* 29 Cal. 251.) The contract is between the county and the person performing the service. The services are rendered to the county, and if a county charge, may be collected by the person performing such service. (*Jolly v. Woodward,* 4 Idaho, 496, 42 Pac. 512; *Feldenheimer v. County of Woodbury,* 56 Iowa, 379, 9 N. W. 315; *Miller v. County of Dickenson,* 68 Iowa, 102, 26 N. W. 31.)

AILSHIE, J.—The question presented for determination in this case is: Is the county liable to a person who furnishes board to prisoners confined in the county jail and can such a person maintain his action against the county for the value thereof? The respondent furnished the sheriff of Bannock county board for prisoners detained by him in the county jail during the year 1902, and about January, 1903, and while the sheriff was indebted to respondent in the sum of $377.10 for such board, it was discovered that the sheriff was a defaulter in a large sum, and thereupon the respondent filed his claim with the board of county commissioners for the amount due him, alleging that the same had been furnished the county at the instance and request of the sheriff. The board of commissioners rejected the claim and the claimant appealed to the district court. The matter was there heard and judgment was entered in favor of the plaintiff, and from such judgment the county has appealed to this court.

It is the contention of appellant that the county is liable only to the sheriff for the board of prisoners, and that any person furnishing such board at the request of the sheriff must look to him directly for his pay and cannot maintain his action against the county. The respondent, on the other hand, insists that the sheriff is only the agent of the county for the procuring of such board and that the county is primarily liable directly to the person furnishing the same. In support of the position of the respondent we are cited to *Jolly v. Woodward,* 4 Idaho, 496,

42 Pac. 512, and *Neville v. Solano County,* 29 Cal. 252. In *Jolly v. Woodward* the claim for which the plaintiff was seeking to recover was for the publication of the delinquent tax list, and an examination of the opinion in that case will disclose the fact that the question raised here did not arise in that case; and, indeed, it could not have arisen there for the reason that the statutes prescribing the duties of the assessor in the publication of the delinquent tax list and the method for the payment of the same are entirely different from the statutes governing in this case. The provisions of the statute as quoted in that opinion show that it was not the intention of the legislature to make the assessor liable for such publication nor to authorize him to present a bill to the county therefor.

In *Neville v. Solano County* the supreme court of California, in 1865, held that under the provisions of an act of the legislature of 1851 prescribing the duties of sheriffs, the sheriff could not maintain his action against the county for the expense of a temporary guard employed by him for the protection of the county jail unless the claim had been duly assigned to him, and the court there decided that the sheriff was the mere agent of the county and that the county was directly liable to the guard for his pay. An examination of the statutes under which that case was decided will reveal the fact that they are not at all similar to the statutes of this state, and that they did not provide for the collection of such expense by the sheriff or the allowance of a claim to the sheriff for such an expense.

So far as we are able to find, that case has never been cited or referred to in California since it was announced by the court, and we conclude that it rests solely upon the peculiar statute existing in that state at the time the case arose.

In this state we find the following statutes bearing upon the duties and liability of the sheriff as to the receiving, taking care of and providing for prisoners and collecting pay therefor: Section 8539, Revised Statutes, is as follows: "The sheriff must receive all persons committed to jail by competent authority, and provide them with necessary food, clothing and bedding, for which he shall be allowed a reasonable compensation to be determined by the board of commissioners, and except as provided in the next section, to be paid out of the county treasury."

Section 2 of the act of February 9, 1899, concerning fees and compensation of county officers provides *inter alia* that: "The sheriff is allowed and may demand and receive the fees hereinafter specified: . . . . Twentieth: The sum of not more than one (1) dollar per day for each prisoner confined in the county jail, as remuneration in full for the board, clothing and lights of such prisoner." (Sess. Laws 1899, pp. 117, 118.)

In section 3 of an act approved March 7, 1899, it is provided that: "The sheriff shall receive a salary of not less than eight hundred dollars ($800) per annum, and not to exceed two thousand dollars ($2,000) per annum; he shall be allowed in addition to such salary as fixed by said board, the actual and necessary expenses for care of each prisoner confined in the county jail." And section 1 of the same act is as follows: "The salaries of county officers as full compensation for their services must be paid quarterly from the county treasury, upon the warrants, of the county auditor, and before being paid to such officers, must be allowed and audited by the board of commissioners as other claims against the county, and no officer or deputy must retain out of any money in his hands belonging to the county, any salary, but all actual and necessary expenses incurred by any county officer or deputy in the performance of his official duty shall be a legal charge against the county, and may be retained by him out of any fees which may come into his hands. All fees which may come into his hands from whatever source, over and above his actual and necessary expenses, shall be turned into the county treasury at the end of each quarter. He shall at the end of each quarter file with the clerk of the board of county commissioners a sworn statement, accompanied by proper vouchers, showing all expenses incurred and all fees received, which must be audited by the board as other accounts." (Sess. Laws 1899, pp. 405, 406.)

The duty to provide prisoners with board devolves upon the sheriff, and that duty is an official duty for which he is allowed compensation over and above his fixed salary. He may furnish board himself or he may procure it from others. In either

event, it seems clear to us that it was the purpose of the legislature to make such claims and expenses payable by the county to the sheriff, and to him alone. As provided by the above statutes, "the sheriff is allowed and may demand and receive the actual and necessary expense" for the board, clothing and lights for prisoners. The law has made this expense payable to a certain person, namely, the sheriff of the county. It has imposed upon him the duty of taking charge of the prisoners; it requires him to board such prisoners and commands the board of commissioners to pay to him—the sheriff—the actual and necessary expense incurred "as remuneration in full for the board, clothing and lights of such prisoners"; provided, however, that such expense shall not exceed one dollar per day for each prisoner. It seems to us that the purpose of the statutes is to impose these duties and liabilities upon the sheriff and thereby relieve the county of the responsibility of dealing with any and every individual from whom the sheriff might be under the necessity of procuring board or other supplies for prisoners. The sheriff must secure these necessities; and it is to be presumed that he will do it to the very best possible advantage to the county, and he has the positive assurance of law that he will be repaid whatever sum is reasonable and necessary in the discharge of such duty. The county has no way of knowing what has been furnished or of the contract price therefor, except through the officer whose duty it is to secure the same. It will be seen from section 1 of the act of March 7, 1899, *supra,* that all *fees* collected by the officer during the quarter are available at once for the payment by him of "all actual and necessary expenses incurred" by him in the performance of his official duty. At the end of the quarter he is required to "file with the clerk of the board of county commissioners a sworn statement, accompanied by proper vouchers showing all expenses incurred," and such report must be audited by the county commissioners.

Respondent argues that under the foregoing provisions a *voucher* is "a written acquittance or receipt showing the payment of a debt," and in the course of his argument says: "Our conclusion is that the sheriff should never present a claim

against the county for the board of prisoners or any other legitimate expense that could be legally allowed, unless he presents to the board of commissioners his 'sworn statement accompanied by proper vouchers' showing that he had paid such expense. We therefore respectfully contend that the phrase 'actual expense for the care of each prisoner confined in the county jail' means the actual outlay or payment of money for benefits furnished such prisoners." This view of the statute and interpretation of the language used seems to us correct. We do not understand how a board of commissioners could allow a sheriff for any such expenditure in the face of this statute until he has paid the same. But this argument leads us to the conclusion that the county is not liable to anyone but the sheriff, rather than that it is liable to the individual with whom the sheriff may contract. The supplies are furnished not upon the faith of the county's credit, but rather upon the credit of the sheriff and the facts in this case are a practical illustration of the practice. The respondent had been furnishing the sheriff with board for prisoners for some years prior to the presentation of his claim in this case. He had never before presented his claim to the board of commissioners, but had always collected his pay from the sheriff. In this case the sheriff became a defaulter to the extent of nearly $3,000, and in the general misfortune which befell the county the respondent seems to have suffered the loss of his claim also. In other words, the claimant never saw fit to make a demand against the county for any of his bills until the time arrived when the county at large, as well as the respondent individually, became the victim of a misplaced confidence. In January, 1903, the sheriff presented his bill to the county for board furnished prisoners, but did not itemize the same or accompany it with proper vouchers. The board seems to have rejected the entire claim under the provisions of section 1771, Revised Statutes, which forbids the allowance of any account, or the payment of any claim where an officer is in default or neglects or refuses to pay over funds in his hands belonging to the county. There seems to be some dispute or controversy going on between the board of commissioners and the sheriff's bondsmen as to the proper action to

be taken with reference to the settlement of the sheriff's claims against the county, but with that we have nothing to do in this case. It seems to us, however, only the part of common justice to suggest that in their settlement with the board of commissioners the bondsmen as the representatives of the sheriff would be entitled to the allowance of respondent's claim as an offset if they present the necessary voucher therefor required by law to be presented by the sheriff. Respondent appears to have a valid claim against the defaulting sheriff, and the bondsmen can protect him by settling with him and presenting the claim as an offset against the county.

As before indicated, we conclude that the county is not liable to the respondent for meals furnished the prisoners under contract with the sheriff. These views are sustained by the supreme court of Kansas under statutes apparently less specific than ours in *Hendricks v. County of Chautauqua,* 35 Kan. 483, 11 Pac. 450, where the court says: "The facts stated in the petition fail to show a liability of the county of Chautauqua in favor of the plaintiff. The statute provides that jails shall be established and kept in every county, at the expense of the county, for the safekeeping of the prisoners lawfully committed. The sheriff of the county is required to keep the jail, and is responsible for the manner in which it is kept, and is required to supply the prisoners with proper food and drink at the expense of the county. (Comp. Laws 1879, c. 53, secs. 1, 3, 10.) In another chapter the liability of the county for the boarding and lodging of prisoners is fixed and limited. The sheriff is allowed forty cents per day, exclusive of fuel, lights, furniture, and bedding, where a jail is provided, and sixty cents per day, where no jail is provided. (Sess. Laws 1881, c. 107, sec. 1.) The county commissioners are not compelled to allow or pay more than the fees above named for everything included within the terms 'boarding and lodging,' nor is the county liable to any other officer or person for the same than the sheriff. The duty and responsibility of keeping the jail, and supplying and caring for the prisoners, is devolved by law upon the sheriff. The care and safekeeping of the prisoners is committed to him, and, in regard to their board and lodging, the board of

county commissioners deals only with him. The only statute authorizing the payment of compensation by the county board provides that it shall be paid to the sheriff, and to him alone is the county liable for supplying board and lodging for the prisoners." (See, also, *Atchison County v. Tomlinson,* 9 Kan. 167.) Judgment reversed and cause dismissed. Costs awarded to appellant.

Sullivan, C. J., concurs.

STOCKSLAGER, J.—I cannot concur with my associates in the conclusion reached in this case. It is conceded by all parties that respondent furnished the meals for which he files his bill; that the parties to whom they were furnished were county charges at the time so furnished; that the county is liable therefor. It is also conceded that the sheriff who made the contract with respondent for the meals so furnished was legally authorized to make the contract. It is also conceded that under the statute he could collect from the county only the actual and necessary expense of the care of the prisoners in his custody as sheriff. In other words, that the sheriff could not speculate off of this class of business. I fully agree that under the provisions of our law cited in the opinion in this case that the sheriff is the proper party to make these contracts. The legislature evidently had in mind the fact that the county commissioners only met in regular session four times annually for the purpose of transacting business of this character, and hence made the sheriff the agent of the county to look after such matters. It is immaterial to the county whether it pays the sheriff or the party who actually furnishes the meals. It must recognize the fact that it is the paymaster, and whether it pays the sheriff for the party or the party directly is of no importance to the county. The law requires the sheriff to file his voucher showing payment before it will settle with him, and such statements and vouchers must be filed each quarter for the quarter preceding. If the sheriff fails or refuses to file such statement and voucher, then the county can pay the party furnishing the items with safety; and if it settles with the party who has to furnish the itemized

bill either to the sheriff or the county, it has his bill on file, and when it issues and delivers its warrants it is an end of any question of payment to the sheriff if the time for filing voucher by the sheriff has elapsed. For instance, if the county had paid this bill to respondent, and thereafter the defaulting sheriff or his bondsmen should file a bill against the county covering the same items, is it possible that the county could not plead the payment in bar of a recovery by either? I think it could, and that it would be a good defense to the action. If this is true, then the sheriff is merely the agent of the county as well as the party with whom he contracts. This seems to me to be the reasonable and fair construction of the statutes. This court has repeatedly held that the sheriff was only entitled to his salary and reasonable expenses in the performance of his duties; that the salary fixed by law was all he could receive. If this is true he had no interest in the bill of respondent excepting to see it paid. If he failed to file the proper voucher within the prescribed time and his bondsmen cannot do it only as they may get it from respondent, must he lose his claim against the county, or await the pleasure of the bondsmen of the defaulting sheriff to collect his money for him? They have no interest in it whatsoever. The county is certainly in a very comfortable and safe position so long as it refuses to pay respondent, for the reason that the sheriff has not filed the proper voucher—has never paid the bill, and is beyond their reach.

It may be that respondent could maintain an action against the sheriff—or his bondsmen. I express no opinion as to this, but the county is primarily liable to respondent and should be required to pay him. The case of *People ex rel. Caldwell v. Board of Supervisors Saratoga County,* 45 App. Div. 42, 60 N. Y. Supp. 1122, is very interesting on some of the questions here involved. At page 1126 it is said: "The contention of the relator is that there was no contract between himself and the board of supervisors, by which he was to be paid at the rate of $3.01 per week for each prisoner confined in jail, and he bases that contention upon the fact that years ago during the encumbency of another person in the office of sheriff a reso-

lution was passed fixing the price to be paid for the board of prisoners at $3.01 per week, and such resolution had never been repealed, and that such action of the board of supervisors constituted a contract between the county and the sheriff to pay him that amount. I· do not think that contention can prevail. Boards of supervisors possess only limited powers; they only have such powers as are expressly conferred upon them by statute, and such implied powers as are necessary to carry into effect those powers expressly granted or such as are necessary to enable them to discharge the duties and liabilities, imposed upon them. . . . . The county is chargeable with, and it is the duty of the board of supervisors to audit and allow, the expenses necessarily incurred in the support of persons charged with or convicted of crime and committed to the jail of the county. This means money actually paid out. Expenses means that which is spent." It is there held that "The board of supervisors had the power to make a contract with the sheriff for the board of prisoners at a fixed sum regardless of the expense. It is the duty of the board of county commissioners of this state to audit all bills coming before them for allowance, and when the bill of respondent was presented it was their duty to determine whether the items charged for had been furnished and whether they were reasonable and necessary. No one could furnish them this information more readily or correctly than respondent, and when this fact was ascertained it was their duty to allow the bill or reject it for some statutory reason other than that the county was indebted to the defaulting sheriff rather than the man who had actually furnished the meals.

For the foregoing reasons I cannot concur in the majority opinion in the entire conclusion reached.