PEOPLE ex rel. LONG v. BOARD OF SUP'RS OF WESTCHESTER COUNTY.

(Supreme Court, Special Term, Westchester County. November 27, 1909.)

1. MANDAMUS (§ 164*)—ALTERNATIVE WRIT—RETURN—SUFFICIENCY.

The return to an alternative writ of mandamus to require the board of supervisors of a county to audit and pass on relator's claim and the several items thereof, which states that the items of the claim are incorrect and illegal or improper charges, is insufficient, for whether the items are correct or incorrect, legal or illegal, is for the board to pass on in the first instance when they act on the claim.

[Ed. Note.—For other cases, see Mandamus, Cent. Dig. §§ 344–354; Dec. Dig. § 164.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

2. COUNTIES (§ 205*)—ACTS OF PUBLIC OFFICERS—REVIEW.
    The action of the board of supervisors of a county in passing on a claim
    against the county and adjudging the same legal or illegal, correct or in-
    correct, is reviewable on certiorari only.
    [Ed. Note.—For other cases, see Counties, Cent. Dig. § 330; Dec. Dig.
    § 205.*]

3. PAUPERS (§ 6*)—OFFICERS—COMPENSATION.
    Under the county law, giving the superintendent of the poor general
    superintendence and care of poor persons, and providing that all pauper
    insane must be transferred to a state hospital, and State Charities Law
    (Laws 1896, pp. 528, 532, 539, 545, c. 546) §§ 68, 94, 109, 124, requiring the
    county superintendent of the poor to place epileptic paupers in the epi-
    leptic colony, and idiots in the proper asylum, etc., the superintendent of
    the poor of a county must provide for the conveyance of paupers to the
    proper institution, or make provision for the conveyance, and, where a
    county superintendent receives an annual salary in full compensation for
    all his services, he can receive no other amount except by way of reim-
    bursement for expenses incurred, and the board of supervisors are without
    authority to fix the compensation of the superintendent for conveying poor
    persons to the proper institutions.
    [Ed. Note.—For other cases, see Paupers, Cent. Dig. § 14; Dec. Dig. § 6.*]

Mandamus by the People of the State of New York, on the relation
of Edward B. Long, against the Board of Supervisors of Westchester
County to compel the board to audit relator's claim. Demurrer to the
return to the alternative writ overruled.

Strang, Sawyer & Taylor, for plaintiff.
Charles A. Van Auken, for defendant.

TOMPKINS, J. This is a demurrer to a return to an alternative
writ of mandamus, which commanded the board of supervisors of the
county of Westchester to audit the relator's claim, as superintendent
of the poor of said county, for conveying persons from said county
to state institutions, at the rates fixed by a resolution adopted by the
board of supervisors of said county in the year 1903, or that said board
of supervisors show cause, etc., and make return to the said writ.
The demurrer is on the ground that the return is insufficient in law up-
on the face thereof. The return to the alternative writ of mandamus,
in so far as it states that the items of the relator's bill are incorrect and
illegal or improper charges, is insufficient in law, for the reason that
the relator only seeks by mandamus to require the board of supervis-
ors to audit and pass upon his claim and the several items thereof.
Whether the items are correct or incorrect, legal or illegal, is for the
board of supervisors to pass upon in the first instance, and its action
upon such items would be subject to review by certiorari only.

The relator in this proceeding asks for a peremptory writ of man-
damus to compel the board of supervisors to act upon his claim and to
allow or disallow it, under the terms of a certain resolution adopted
by the board of supervisors of Westchester county on the 5th day of
October, 1903, by which said board undertook to fix the compensa-
tion to be made to the relator, who was then the superintendent of the
poor of said county, for conveying poor, indigent, and sick people to
state institutions, and the relator bases his claim altogether upon the

validity and force of that resolution. The return of the defendant sets forth and alleges that the said resolution was ultra vires, and was never of any force or effect, so that the question presented upon this demurrer to the return is whether the resolution adopted by the board of supervisors in the year 1903 was authorized by law, and whether the relator is entitled to the compensation fixed thereby, and upon the argument of this demurrer it was agreed by counsel representing both sides that that was the only question to be decided, and that upon the decision of that question would depend the sustaining or overruling of the demurrer.

After a very careful consideration of the question and of the briefs submitted by the learned counsel for the relator and the defendant, I have come to the conclusion that the board of supervisors in the year 1903 exceeded its power when it adopted the resolution in question. At that time the relator was superintendent of the poor of the county of Westchester, and received an annual salary of $4,000 per annum, which salary was to be full compensation for all his services as such superintendent of the poor. He could receive no further or other amount except by way of reimbursement to him of moneys necessarily expended in the discharge of his duties.

It seems to me that the case of People of State ex rel. Caldwell v. Supervisors of Saratoga County, 45 App. Div. 42, 60 N. Y. Supp. 1122, is parallel to this case. In that case the sheriff of Saratoga county was paid a salary, and he claimed compensation at the rate of $3.01 per week for the board of prisoners, under a resolution previously adopted by the board of supervisors of that county, by which the sheriff then in office was to be paid that amount, and which resolution had never been rescinded or repealed. The Appellate Division of the Third Department in its opinion says:

"The contention of the relator is that there was a contract between himself and the board of supervisors, by which he was to be paid at the rate of $3.01 per week for each prisoner confined in the jail; and he bases that contention upon the fact that years ago, during the incumbency of another person in the office of sheriff, a resolution was passed fixing the price to be paid for the board of prisoners at $3.01 per week, which resolution had never been repealed, and that such action of the board of supervisors constituted a contract between the county and the sheriff to pay him that amount. I do not think that the contention can prevail. Boards of supervisors possess only limited powers. They have only such authority as is expressly conferred upon them by statute, and such implied power as is necessary to carry into effect these powers expressly conferred, or such as is necessary to enable them to discharge the duties and liabilities imposed upon them. They have no power or authority to audit or allow any claim or bill against the county that is not a legal charge. They cannot be liberal or generous with the money of the people. They can only expend it to pay the county's legal debts or obligations. One of these debts or obligations is the expense of maintaining prisoners in jails. By section 230 of the county law (chapter 686, p. 1793, Laws 1892), what are county charges are enumerated, and, among others, the following: 'The expenses necessarily incurred in the support of persons charged with, or convicted of crime, and committed to the jails of the county. * * * The moneys necessarily expended by any county officer in executing the duties of his office, in cases in which no specific compensation for such services is provided by law.' The county is chargeable with, and it is the duty of the board of supervisors to audit and allow, the expenses necessarily incurred in the support of persons charged with, or convicted of, crime, and committed to

the jail of the county. This means the money actually paid out. 'Expenses' means that which is spent; money expended; expenditures; cost. Worcester's Dict.

"The sheriff is by law made the custodian of the jail and of the prisoners confined therein, and is entitled, under the county law above quoted, to the moneys expended by him in executing his duties as such custodian; but he is entitled to no more. The board of supervisors has no power or authority to compensate him for his care and trouble in looking after the prisoners, or in feeding them, but only for the money he has actually expended. Section 3280 of the Code of Civil Procedure provides that: 'Each public officer, upon whom a duty is expressly imposed by law, must execute the same without fee or reward, except where a fee or other compensation therefor is expressly. allowed by law.' People ex rel. Keeffe v. Board of Town Auditors, 24 App. Div. 579, 49 N. Y. Supp. 525, affirmed 156 N. Y. 689, 50 N. E. 1120. No fee or reward or other compensation is provided by law for the care or feeding of prisoners by the sheriff. The only provision relating thereto are those above stated; that is, that the expenses necessarily incurred in discharging the duties of his office, where no specific compensation is provided, shall be a county charge, and that the expenses incurred in the support of prisoners convicted of crime shall be a charge. Such being the law, I think the board of supervisors had no power to make a contract for the board of prisoners, with the sheriff, at a fixed sum regardless of the expense. There is no pretense in this case, and there was none upon the argument, that the expense of supporting these prisoners amounted to the sum charged in the sheriff's bill—no claim that it had cost him that amount.

"I am aware that for a long time·it has been customary for boards of supervisors, all through the state, to allow sheriffs a weekly sum for the support of prisoners without regard to what it has cost the sheriff to support them; but such a custom cannot prevail against what seems to me the plain reading of the statute. The provisions of section 3280 of the Code of Civil Procedure were adopted for the very purpose of cutting off gratuities to public officers, or compensation for services rendered by them where no compensation is expressly provided by, law; it being intended to confine them to those fees, rewards, or other compensation that the law expressly provides, and no other. The county law provides for the simple reimbursement to them of the moneys necessarily expended by them in the discharge of their duties, where no compensation is provided."

I quote at length from the opinion in the last-named case because it seems to be so applicable to, and decisive of, this case; but the learned counsel for the relator insists that the case at bar is distinguishable from the Caldwell Case, for the reason that, in the latter case, it was the duty of the sheriff to board and care for the prisoners of the county jail, while he contends that it was not the duty of the relator to convey persons from Westchester county to the state institutions. I do not see any real or substantial difference between the two cases. It seems to me that it was the duty of the relator to have poor and indigent persons, who were charges upon the county, taken to the proper state institutions. The county law provides that the county superintendent of the poor shall have the general superintendency and care of poor persons who may be in their respective counties, and that all pauper insane must be transferred to a state hospital, and it was held, in the case of People ex rel. State Commission v. Superintendents, 65 Hun, 620, 20 N. Y. Supp. 10, that the superintendents of the poor are bound to see that all such insane are transferred.

Section 109 of the state charities law (Laws 1896, p. 539, c. 546), in relation to commitments by superintendents of the poor, provides:

"Whenever an epileptic shall become a charge for his or her maintenance on any of the towns, cities or counties of this state, it shall be the duty of all of the poor authorities of such state, and of the county superintendent of the poor, and of the supervisors of such county to place said epileptic in said colony."

Section 94 of the state charities law provides that:

"The superintendents of the poor of the various counties in the state, may commit to such asylum, if vacancies exist therein, such unteachable idiots residing in their respective counties who are indigent or inmates of the county alms house, according to the by-laws and regulations of the asylum."

Section 68 of the state charities law provides that:

"Feeble minded children may also be received into such institutions upon the official application of a county superintendent of the poor."

Section 124 of the state charities law provides as follows, respecting the state industrial school at Rochester:

"Children under the age of sixteen years may be committed from the rural counties in this state, as vagrants, to the state industrial school."

These and similar provisions of the statutes, and the regulations of the different state institutions, seem to make the superintendents of the poor of the state responsible for the commitment to such state institutions of poor, indigent, and sick persons within and chargeable to their respective counties. Such superintendents have general charge and care of all the poor of a county, and, while there is no express provision of the law making it the duty of superintendents of the poor to personally convey such persons to the said state institutions, yet it is nevertheless made the duty of such superintendents to see to it that such persons are committed to and placed in said institutions.

Counsel for the relator argues that the superintendent's duty ended when he committed the persons to the several institutions, and that it was not his duty to personally convey or transport them. Whether he does it personally or not is not important. He is required to do it or have it done, and no other public officer is charged with that duty. No provision is made for the conveyance of these persons by any other public officer. Hence it follows that it was the superintendent's duty to personally convey them to the several institutions, or to make provision for their conveyance. The duty of seeing that they reached said institutions rested upon him, and it was therefore a part of his official duty to have the poor persons named in his claim conveyed and delivered to the state institutions therein named, and for such services he can receive no more than his actual and reasonable expenses. The resolution of the board of supervisors in the year 1903, fixing his compensation at so much per mile traveled in going to and from such institutions, which it appears was considerable in excess of the actual expenses, was without authority and void.

It is my opinion that the present board of supervisors was right in disregarding the said resolution of 1903, and in allowing the relator only for his actual and necessary expenses, and that the return, in so far as it alleges the invalidity of the said resolution, is a sufficient defense to the relator's claim.

The demurrer to the return is therefore overruled.