---

(71 Misc. Rep. 398.)

### In re BROWER et al.

(Surrogate's Court, Kings County.   March, 1911.)

1. EXECUTORS AND ADMINISTRATORS (§ 118*)—SALES OF PROPERTY OF ESTATE—LIABILITY OF EXECUTORS.

Executors are not chargeable because they did not get the highest price obtainable for property of the estate, if they acted with the diligence and prudence which an ordinary man would exercise in his own affairs.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 472–482; Dec. Dig. § 118.*]

2. STIPULATIONS (§ 14*)—CONSTRUCTION—"EXPENSES OF ADMINISTRATION."

Where a stipulation provided that expenses of administration should be borne by the life tenant, it did not include costs of an accounting contested only by the remaindermen.

[Ed. Note.—For other cases, see Stipulations, Dec. Dig. § 14.*

For other definitions, see Words and Phrases, vol. 3, pp. 2590–2593; vol. 8, p. 7657.]

Proceedings for the settlement of accounts of Emeline E. Brower and others, executors of James C. Brower, deceased. Motion to confirm report of referee granted.

Owens & Gray, for executors.
Augustus Van Wyck, for contestants.

DIKE, County Judge, Acting as Surrogate. The referee to whom was referred the accounts of the executors and trustees under the last will and testament of James C. Brower, deceased, has filed his re-

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

port, to which the contestants have filed certain objections. This motion is made by the executors and trustees to confirm the report.

The decedent, James C. Brower, died in the county of Kings, leaving a last will and testament which was admitted to probate by the surrogate of Kings county; and letters testamentary were granted to the three petitioners herein on May 5, 1899.

By the terms of the will, the decedent, after making certain specific bequests, devised the whole of his estate to his trustees named, to be held in trust for the benefit of his widow, one of the petitioners herein, setting apart a fund of $10,000 which was to be held by his trustees for the use and benefit of the testator's adopted son during his life; and such will provided that, upon the death of his widow, his trustees were to set aside an additional sum of $100,000 during the life of the adopted son, and to pay the income therefrom during his life, if he survived the testator's widow, to him. The remainder was to be distributed between the decedent's niece and nephew in the proportion of one-third and two-thirds, respectively. The decedent's adopted son is now dead. It appears that the decedent's estate consisted largely of real estate. By the will, the executors and trustees are ordered, within three years after the death of the testator, if possible, to sell all the real estate, with certain small exceptions, "at public or private sale, at such time or times and upon such terms as to them shall seem wise." The contestants insist that the executors and trustees sacrificed certain of the real estate by selling the same at a grossly inadequate price and not at the fair market price, thus causing a serious loss to the estate. I have carefully examined the record made before the learned referee, and I conclude that his decision upon this matter was entirely justified by the evidence. Instead of selling within three years, the executors and trustees did not sell until some six years, seeking during that time to obtain purchasers; and, far from causing any loss that could be criticised, the carrying charges for the real estate were borne by the widow out of her income. The experts produced by the representatives of the estate appeared to be men conversant with values and whose judgment thereon was based upon known sales in the locality, whereas the experts produced by the contestants utterly failed to show any specific knowledge, or any knowledge, indeed, which would warrant their figures in having any weight.

[1] It was not enough for the contestants to show that the representatives of the estate did not get the highest price obtainable. It must be shown that they acted negligently, and with an absence of diligence and prudence which an ordinary man would exercise in his own affairs. An honest mistake will not furnish basis for charging the executors. It is true, as is urged on behalf of the representatives of the estate, that negligence without loss creates no liability. Loss and negligence concurring create no liability of themselves, unless the loss is the result of the negligence. The essential thing is that the negligence must be the cause of the loss, and the record is barren of any evidence to show that the executors caused any loss to this estate through any negligence or lack of foresight or diligence on their part. It seems clear to me from the record that the executors acted with

prudence and diligence in their efforts to dispose of the real property. Upon this point, therefore, I am constrained to overrule the objections of the contestants as to the disposition of the real property by the executors.

As regards the Knickerbocker bond, this, it seems to me, was clearly an asset difficult of disposition and of doubtful value, and the sum of money received, namely, $815.90, was a fortunate solution of a serious problem, being the proceeds of the insurance on the vessel owned by the Knickerbocker Steamboat Company. I hold, therefore, the executors are to be held for no loss arising from any act of theirs regarding this item.

As regards the taxes on the life estate of James C. Brower, Jr., the contestants claim that it was the duty of the trustees, before making a payment to the beneficiary, to deduct taxes for the same and to keep intact the principal of the estate. This is undoubtedly a correct statement of the general law, but the trustees were confronted by a serious situation. The taxes were payable immediately. It does not seem to me that the executors should have paid this out of the income to Mrs. Brower for life, and their payment of this sum from the principal was proper, in view of their statement in their former accounting, "When the estate to James Clinton Brower takes effect in possession the amount paid will be deducted from the income of that fund and returned to the principal fund. Old account, Schedule T, page 47," and clearly shows their frankness in dealing with a situation that was warranted, in my judgment, under the circumstances.

As to the other objections, I feel that no extended argument is necessary and that the learned referee did not err in his conclusions.

[2] An interesting point arises, and a novel one, too, in this state, upon the question of the costs. The executors claim that they are entitled, under sections 2561 and 2562 and the supplemental section 2559, Code Civ. Proc., to costs, and that these costs are chargeable on the general fund. The contestants insist that the expenses of this accounting should be borne by the life tenant, basing their demand upon the decree entered May 6, 1905, in the Surrogate's Court in the matter of the first accounting, where a certain stipulation was entered into between the parties by which it was agreed that all future administrative expenses should be borne by the life estate. It becomes necessary for me, therefore, to decide whether the costs and expenses of this accounting should be paid entirely from the income. The life tenant did not make any contest. The entire contest was made by the remainderman. In the construction of the stipulation above referred to, was it intended that these costs and expenses should be paid from the principal or from the income? In Matter of Seagrist, 1 App. Div. 615, 37 N. Y. Supp. 496, a contest somewhat similar, the costs were charged against the contestants personally, where the contest was unsuccessful. This is not asked for by the representatives of this estate. In the stipulation above referred to, the phrase is "Administrative expenses." What, therefore, does this phrase mean? The Code provides for expenses of administration in section 2730. The sections relating to costs are 2561 and 2562. The distinction between costs and administrative expenses is clear. Costs do not come into

130 N.Y.S.—13

existence until the decree allows them and the executor pays them under the directions contained in the decree. They are to be considered judicial expenses rather than administrative expenses. Expenses of administration are paid before accounting—costs come into being only after the decree is signed. The point is interesting as it is new in this state, so far as I am able to discover. The only case that has been brought to my attention is the case of Lester v. Mathews, 56 Ga. 656. That case holds that counsel fees are not included in the term "administrative expenses." Administrative expenses imply disbursements incidental to the management of the estate for which credit would be allowed on a voucher, while costs are in abeyance until the final adjudication. It would be inequitable, indeed, to place a construction upon the various administrative expenses as used in this stipulation which would permit one to be mulcted in costs though not making any contest, and, indeed, not participating in any act calculated to reduce or cripple the funds. In Matter of Seagrist, supra, at page 623 of 1 App. Div., at page 502 of 37 N. Y. Supp., the court held:

"The award of costs in a case is made by way of indemnity to the successful party. One who is entitled to share in an estate is not indemnified in that regard if he is compelled to give up part of the estate to pay himself for costs which other people have made in trying to take the estate away from him. Therefore, when the person trying to get the estate fails to secure it, it is a proper case, in our judgment, to require him to pay the costs of his unsuccessful attempt."

That case goes further than we feel is necessary in this case.

Finally, as to the fund of $100,000 set aside under the will (twelfth clause), in trust during the life of his adopted son, James C. Brower, Jr., there can be no question that the trustees should pay this money to those clearly entitled thereto (and they would clearly seem to be the two remaindermen mentioned in the will), with interest from the date of the death of the life tenant. The motion is granted, with costs from the general fund.

Motion granted.