In the Matter of the Estate of SAMUEL C. HOOKER, Deceased.

Surrogate's Court, Kings County, March 6, 1940.

*Harry M. Peyser* [*Edward Devlin* of counsel], for the State Tax Commission for the motion.

*Carter, Ledyard & Milburn* [*McDonald E. Wrenn* of counsel], for the executors, opposed.

WINGATE, S. Singularly enough, the question underlying the present motion appears to be one of first impression so far as reported decisions construing either the Federal or State estate tax laws are concerned. It relates to the question of the permissibility of allowance of a deduction for tax purposes from the gross assets of an estate of sums representing executorial commissions in a case in which such commissions have, in fact, never been paid, and the fiduciaries have severally executed instruments irrevocably waiving such payment.

On February 3, 1937, an order was made for the appraisal of this estate for tax purposes. In the schedules as filed there was listed in the schedule respecting deductions for ' Funeral and Administration Expenses," an item reading " Executors' commissions, estimated, $25,974.66." This figure was reduced by the appraiser to $24,461.94 and allowed in the latter sum. The net estate was appraised at $371,741.45, this result having been attained in part by reason of the allowance of this deduction of $24,461.94. The report of the appraiser was filed in this court on April 6, 1937, and the *pro forma* order fixing the tax was made on April 7, 1937. No appeal was ever prosecuted therefrom.

As a result of investigations made by the Income Tax Bureau of the Department of Taxation and Finance in seeking to ascertain why one of the executors had not reported this commission as taxable income, it was ascertained that the commissions attributable to the three executors, amounting to $8,153.98 each, had been severally waived by them and duly acknowledged instruments executed by them, respectively, have now been filed in this court. These are in identical form with the exception of the name of the individual executor. They read: " I, the undersigned · * * * hereby certify that I have irrevocably waived my commissions as an executor in respect of the estate of Samuel C. Hooker, deceased."

On October 9, 1939, the State Tax Commission moved this court for a remission of the report to the appraiser for correction and amendment so as to eliminate the noted deduction for executorial commissions.

This motion was denied without prejudice (*Matter of Hooker*, N. Y. L. J. Dec. 21, 1939, p. 2264) on the ground that the presentation of the question was premature since fiduciary commissions on principal are not payable until their actual allowance by the court (*Beard* v. *Beard*, 140 N. Y. 260, 265; *Matter of Worthington*, 141 id. 9, 11; *Oakeshott* v. *Smith*, 104 App. Div. 384, 388; affd., 185 N. Y. 583; *Matter of Sharp*, 140 Misc. 427, 429; *Matter of Kirkman*, 143 id. 342, 347, *Matter of Taft*, Id. 387, 390; *Matter of Collins*, 158 id. 798, 802), which can occur only on the judicial settlement of their accounts, wherefore withdrawal thereof by these fiduciaries prior to an accounting, which has not yet been had, would have been an unlawful act which would result in their surcharge on the objection of any interested party when their accounts are actually submitted. (*Matter of McCafferty*, 147 Misc. 179, 201.)

To meet this objection, and to permit adjudication of the underlying issue on the merits, the attorneys for the executors subsequently filed the waivers and renunciations of commissions hereinbefore recited, and the State Tax Commission has moved for

a reargument of the previous decision on the faith of their demonstration.

From a technical view point, this is, of course, improper practice, since the law is well settled that the purpose of a reargument is merely to demonstrate to the court " that there is some decision or some principle of law which would have a controlling effect, and which has been overlooked; or that there has been a misapprehension of the facts " (*Bolles* v. *Duff*, 56 Barb. 567, 574; to like effect see *Banks* v. *Carter*, 7 Daly, 417, 423; *Matter of Crane*, 81 Hun, 96, 98), with the result that, except under most unusual circumstances, a " motion for a rehearing must be based upon the original papers." (*Hauser* v. *Herzog*, 141 App. Div. 522, 524; *Matter of Grube*, 169 Misc. 170, 193, 194. See, also, *Haskell* v. *Moran*, 117 App. Div. 251, 252; *DeLacy* v. *Kelly*, 147 id. 37, 38.)

Since, however, a present adherence by the court to its former decision would result merely in compelling the making of a new motion on a demonstration identical with that now before it, and both parties seek a decision on the merits without going through this wholly purposeless formality, the court will proceed to consider the issue *de novo* on the present record demonstration.

In the absence of controlling, or, indeed, any, precedent for guidance in the decision of this issue, resort must be had to the language of the pertinent enactment itself. This is found in section 249-s of the Tax Law. It reads: " Such amounts (a) for funeral expenses, (b) for administration expenses, (c) for claims against the estate, (d) for unpaid mortgages upon, or any indebtedness in respect to, property where the value of decedent's interest therein, undiminished by such mortgage or indebtedness, is included in the value of the gross estate, and (e) reasonably required and actually expended for the support during the settlement of the estate of those dependent upon the decedent, as are allowed by the laws of this State * * * shall be allowed as a credit in the manner provided by section two hundred forty-nine-o of this article. * * * Deductions on account of commissions or allowances to executors shall not exceed the amount of such commissions or allowances as prescribed by law."

It is a fact familiar to all adepts respecting the subject, that article 10-C, of which the foregoing section is a part, and which imposes a tax upon the transmission of property on death, was a substitute for that formerly imposed by article 10, which taxed the right of the several beneficiaries to receive the assets of the deceased in testate or intestate devolution. As a *prima facie* matter, and in the absence of express contrary specification, all that should be subject to tax in either event is that upon which

the accorded privilege of decedent transmission or receipt actually operates, namely, the net cash value of the property received or transmitted. Conversely, however, the total value actually beneficially received or transmitted should, as a matter of logical theory, be subjected to tax, since the right of receipt or transmittal accrues only by virtue of the privilege accorded by the sovereign. (*Magoun* v. *Illinois Trust & Savings Bank,* 170 U. S. 283, 288; *Knowlton* v. *Moore,* 178 id. 41, 47.)

This primary conception was repeatedly recognized in interpretations of the Transfer Tax Law, a typical statement being that contained in *Matter of Gihon* (169 N. Y. 443, 445): "Personal property does not pass directly from the deceased to his legatee or next of kin, but all such legatee or next of kin takes is what may be coming to him from the estate on its distribution after settlement. The amount represented by the expenditures of the administrator or the expense of administration never passes to the legatee or next of kin, and, therefore, is not subject to the tax." (See, also, *Matter of Westurn,* 152 N. Y. 93, 103.)

Article 10 did not include and, obviously, did not require any specification of the permissible deductions. That which was taxed was the right to receive, and the tax was, and could properly be, measured only by the actual beneficial receipt. There is no reason to suppose that an alteration of this concept was intended when, for purposes of conformity to the Federal statute, the tax was altered from one on the right to receive to one on the right to transmit. It follows, therefore, that such property alone should form the measure of the tax which is beneficially transmitted. Conversely, all which is in fact thus transmitted should be considered in the assessment, in the absence of clear and express contrary statement.

The inquiry then resolves itself into one of ascertaining whether any language of the statute either expressly or by necessary implication negatives this basic concept that the measure of the tax imposed by article 10-C is anything other than the property, beneficial transmission of which by the decedent is permitted by the State. The immediately pertinent language reads: "Such amounts * * * for administration *expenses* * * * as are allowed by the laws of this State * * * shall be allowed as a credit * * *. Deductions on account of commissions * * * shall not exceed the amount of such commissions * * * as prescribed by law." (Italics supplied.)

It seems obvious that the key word in the interpretation of the section is "expenses." It is only an item complying with its

connotation, deduction of which in this connection is permissible. The signification of the word " expenses " is well established both in popular parlance and in law. It is the substantive form of the verb expend, which is derived from the Latin words " ex," meaning " out," and " pendere," " to weigh," referring to the ancient custom of payment by weight of cereals and other products. The definition of the word " expense " as contained in the Standard Dictionary is typical of the several other lexicographical statements which have been found: " 1. (1) the laying out or expending of money or other resources, as time or strength; disbursement; expenditure; hence, drain on resources; detriment; loss; as, at the expense of health. (2) The habit of expending. 2. Money expended; outlay; charge; as, expenses for the journey."

The foregoing definition of the term was adopted and applied in *Matter of Bates* (152 Misc. 627, 629). Other judicial statements respecting the connotation of " expenses " are: " This means the money actually paid out. * * * ' That which is spent; money expended; expenditure; cost' " (*People ex rel. Caldwell* v. *Board of Supervisors of Saratoga County*, 45 App. Div. 42, 50); " expenditure, outlay or disbursement of money " (*Bowery Bank* v. *Hart*, 37 Misc. 412, 413; *Matter of McMurray*, 131 id. 182, 183); a " disbursement of money " (*Matthews & Willard Mfg. Co.* v. *Trenton Lamp Co.*, 73 Fed. 212, 215). To these may be added the statement in *Matter of Brower* (71 Misc. 398, 402): " Administrative expenses imply disbursements incidental to the management of the estate for which credit would be allowed on a voucher."

It·is a primary principle in the interpretation of any variety of writing that " the presumption is in favor of the proper and correct use of words, whether technical or belonging to the language of ordinary life * * *. The great mass of the words even of illiterate persons are used correctly. The lapses are only occasional, or the language would cease to serve the purposes of communication." (*Matter of Ihries*, 162 Penn. St. 369, 372; 29 A. 750; *Matter of Dudley*, 168 Misc. 695, 697; *Matter of Grube*, 7 N. Y. Supp. [2d] 794, 801. See, also, *Matter of McShane*, 158 Misc. 777, 779.)

In the present instance, the Legislature has employed a word possessing a well-defined connotation which implies that to be allowable as a deduction from the gross estate, a sum must be actually paid out or spent, or, presumably, be necessary of such actual payment or spending under the particular facts of the individual case. The theory underlying the entire subject of estate taxation tends to support this signification and there is nothing in the statute to contradict it. On the contrary, the final quoted clause tends to support it. This reads that commission deductions

" shall not exceed the amount of such commissions * * * as prescribed by law." If the intention of the Legislature had been that statutory commissions shall be deductible in any event, it would have been easy to say so. It was not said, but was limited to " expenses " not exceeding the statutory limit, thereby indicating that the only permissible deduction in this regard was the money actually paid out in an amount not in excess of that specified in section 285 of the Surrogate's Court Act.

It follows, that since the $24,461.94 deduction here allowed was never paid out, and its payment is now foreclosed and will, admittedly, never occur, it is an improper mitigation of the impost upon the estate.

The reliance of the executors in this connection upon *Matter of Suderov* (156 Misc. 661; affd., 249 App. Div. 763; affd., 274 N. Y. 525) is misplaced. The question which this court there determined was the meaning of the statutory authorization " for claims against the estate." In that connection there is no requirement similar to the present, that a claim must be paid in order to constitute a valid deduction. Here such a requirement is inevitably implied from the word " expenses."

In conclusion the executors assert that even if their contention is erroneous on the merits, yet the question involved is one of law, which is reviewable only on appeal, the time for which has expired. This contention is also unsubstantial. The question was purely one of fact — whether the estate would, in fact, be depleted to the extent of $24,461.94 by reason of actual payment of executors' commissions. The schedules impliedly asserted that it would. The fact has been otherwise. As the court views it, the executors are here impaled on the horns of a dilemma. Either, at the time of the filing of the schedules the executors knew that no commissions would be paid, in which event their contrary representation in the schedules amounted to a constructive fraud, or they did not know it, in which situation the resulting computation constituted a mistake of fact. In the former case jurisdiction for correction is self evident. It is no less so in the latter. (*Matter of Wing*, 162 Misc. 551, 553; *Matter of Willets*, 119 App. Div. 119; affd., 190 N. Y. 527; *Morgan* v. *Cowie*, 49 App. Div. 612, 615; *Matter of Hopson*, 213 id. 395, 397.)

The motion is accordingly granted and the report of the appraiser will be remitted to him for correction and amendment.

Enter order on notice in conformity herewith.