In the Matter of the Accounting of PAULINE JONES, as Executrix of ARCHIE M. SHURTLEFF, Deceased.

Surrogate's Court, St. Lawrence County, July 26, 1954.

*Allan L. Gurley* for Raymond Shurtleff, objector.

*William E. Perry* for executrix.

WELLS, S.   In this accounting proceeding, the act of the executrix under the will of this decedent, in selling the real property, which she was authorized to sell, is challenged.

The executrix was examined under oath, as provided by section 263 of the Surrogate's Court Act, and it is her contention that having the necessary legal authority to sell, the decision as to time and manner of sale involves a question of pure business judgment, and seeks to justify the sale on such grounds. (*Matter of Chapman*, 32 N. Y. S. 2d 290, 291, 292.)

Letters testamentary were issued to this executrix April 23, 1953.   The main asset of the estate was a ninety-six-acre tract in the town of Colton with four main buildings — a six-room log house, where Mr. Shurtleff lived, a two-car garage, barn, and shed.   About three fourths of the land had been cleared. Raymond Shurtleff, son, and Lillian Richardson, daughter, are the only persons interested and share equally.   The real property was appraised at $1,200 and the furniture at $67.   (This tract is in close proximity to State forest land.)

The executrix made effort to sell by writing to people she thought would be interested. In July, she received a parol offer of $930, and in August, one for $1,000. She also received three offers in writing, $1,451.99 on August 6, 1953, from Graham Garlick, R.F.D., Geneva, N. Y.; $2,002 on August 8th, from James L. Matson, Endicott, N. Y.; and $1,200 on September 19th, from the Samson Pond Club.

On August 6th, the attorney for the executrix wrote to Raymond Shurtleff, the objector, informing him of the $1,451.99 offer and that "he would keep him informed as to any new developments", then on September 22d, he wrote a second letter, "your father's property is to be sold to Mr. and Mrs. James L. Matson, 116 Badger Ave., Endicott, N. Y., their bid in the amount of $2002.00 was the highest and I expect to close the transaction Friday, September 25, 1953. I have spoken to Mr. and Mrs. Matson by phone and they informed me they would be up here at that time."

This letter of September 22d, received on the 23d, was objector's first actual knowledge of this offer. Consequently, the next day, Thursday, September 24th, he went to see the attorney for the executrix at his office and informed him that one Chester Race of Port Byron, N. Y., had been over this property on Labor Day (September 7th), and had indicated that he was interested in buying it and would offer at least $2,550, such offer to be submitted by the next Monday or Tuesday (September 28th or 29th) and Shurtleff requested the attorney to hold up the sale. A similar request was made by telephone by the objector's attorney the same day, while the objector was still in this office.

To justify the sale the attorney for the executrix contended that the Matsons wanted this property for hunting (hunting season, Oct. 25th to Nov. 25th, p. 46, transcript of testimony) and in the event of such delay the sale to them might be lost. He also made a further statement he would not hold the place because he thought he had a fair bid. The objector then offered to buy for the amount of the Matson offer, to establish a continuing guaranty for the sale at that amount. Heedless of such request and guaranty, also of the fact that the Matson offer provided it was good only until September 15th, and the sale agreement with them was void under section 259 of the Real Property Law, the executrix on Saturday, September 26th, sold the real property and furniture to the Matsons for $2,002. This sale was made without verifying by her own investigation whether or not Mr. Race was a potential buyer, by any inquiry.

In the exercise of ordinary judgment, this information should have prompted some inquiry in deference to this expressed desire of the objector.

Subsequently on Tuesday, September 29th, Mr. Race telephoned the objector, neither of whom knew the property was then sold, that he was mailing a bid for $2,550, which offer, postmarked September 30th, Port Byron, N. Y., was duly received.

Sales of real estate situate in the State of New York made by executors in pursuance of an authority given by any last will unless otherwise directed in such will may be public or private and on such terms as in the opinion of the executor shall be most advantageous to those interested therein. (Decedent Estate Law, § 110.)

When the assets of an estate consist of real property which an executor is authorized to sell and the value is uncertain or dependent upon the time and manner of sale, such representative may apply to the Surrogate for advice and direction as to the propriety, price, manner and time of sale. (Surrogate's Ct. Act, § 215.)

The proper and efficient administration of an estate demands that the propriety of a general discretionary power of sale conferred in a will upon an executor, in the first instance be determinable by the executor, and it is for this reason in such cases the courts uniformly refuse to entertain applications by a fiduciary for advice and direction as to the sale of property where no unusual or exceptional circumstances are involved. (*Matter of Zehe*, 57 N. Y. S. 2d 574, 577; *Matter of Chapman*. *supra*; *Matter of Graves*, 197 Misc. 555.)

In the *Graves* case (*supra*), the executor entered into a contract for sale of tavern property at certain price subject to approval of Surrogate's Court and thereafter entered into contract with another party procured by certain beneficiaries under the will, for sale at higher price. On application under section 215 of the Surrogate's Court Act, the Surrogate's Court directed the executor to carry out the contract at the higher price.

In this proceeding the executrix did not seek advice as to the manner or time of sale as provided by section 215 of the Surrogate's Court Act. Through poor judgment or bad advice, or both, it turned out that she made a bad bargain. Under the circumstances as the events have proven she was lacking in the exercise of care. When the information concerning the higher price to be offered by Mr. Race was received, there was

no valid agreement for the sale of the premises to the Matsons meeting the requirement of section 259 of the Real Property Law. Then the executrix without liability had time for diligent inquiry to determine whether or not such sale could be made to Mr. Race, his offer obtained and a contract entered into with him. Commencing with the decision of *300 West End Ave. Corp.* v. *Warner* (250 N. Y. 221), it has been held that the Statute of Frauds may be urged by either party to an agreement for the sale of real property. (*Lerner* v. *Lawrence,* 104 N. Y. S. 2d 723.)

It certainly would seem that this is a special type of case as in the *Graves* case (*supra*), in which the Surrogate, in the event such representative had petitioned therefor, may properly have given advice and direction to the executrix and a substantial compliance with the authorization so given, would have relieved the executrix from any charge or objection that the estate or persons interested suffered a loss on account of the time or manner of sale or the price realized. Having assumed responsibility, even though acting in good faith, a representative cannot impose upon the estate a liability which would not exist except for its own injudicious act. (*Matter of Paddock,* 53 N. Y. S. 2d 265.)

The executor may of course be held liable for a failure to exercise a power of sale in a proper manner. If loss results to the estate from his acts, he may be surcharged the amount of that loss. Where the sale has been properly conducted and the property is sold for a fair price and on reasonable terms, no objection ordinarily can be made. The representative is required in making the sale to use the same careful judgment and prudence that a reasonably prudent business man would use in the conduct of his own affairs. Where he does this, his acts will ordinarily be sustained. If he does not, he may be surcharged. (3 Warren's Heaton on Surrogates' Courts, § 256, subd. 6, par. [F].) An executor owes the estate an active duty to use diligence and care to preserve its value and prevent its loss. (*Matter of Auditore,* 249 N. Y. 335, 341.) " It is the function of this court to preserve and to enhance, as far as possible, the assets of decedents' estates. * * * Obviously, it is to the advantage of the estate that the second contract, calling for a higher price be performed." (*Matter of Graves, supra,* p. 557.)

To these may be added the statement in *Matter of Brower* (71 Misc. 398, 400), " It was not enough for the contestants to show that the representatives of the estate did not get the

highest price obtainable; it must be shown that they acted negligently, and with an absence of diligence and prudence which an ordinary man would exercise in his own affairs. An honest mistake will not furnish basis for charging the executors. It is true, as is urged on behalf of the representatives of the estate, that negligence without loss creates no liability. Loss and negligence concurring create no liability of themselves, unless the loss is the result of the negligence. The essential thing is that the negligence must be the cause of the loss ''. Also, *Matter of Bingham* (17 N. Y. S. 2d 981, 991), '' A causal investigation or inquiry by him would have disclosed the circumstances existing in the management of the real property.''

The evidence shows that the executrix caused a loss to this estate through negligence, or lack of diligence on her part, in failing to investigate the higher offer on the information furnished by the objector.

I find this evidence of negligence in the record sufficient to sustain the objections and a surcharge against the executrix for her conduct, but no bad faith or other ground sufficient to deny commissions, because the estate should not benefit more than if the sale had been made for the higher price.

Commissions were allowed as credit against surcharge (*Matter of Feinberg*, 82 N. Y. S. 2d 879, 882, affd. 275 App. Div. 925.)

Under the circumstances the executrix was negligent and must be charged with the loss for which she is responsible and which resulted from her negligence. The measure of surcharge should be determined at $548, the difference between the $2,550 offered and the $2,002, sale price.

Proceed accordingly.