[Civ. Nos. 22242, 22243. Second Dist., Div. Two. Mar. 17, 1958.]

COUNTY OF LOS ANGELES, Respondent, v. STATE DEPARTMENT OF PUBLIC HEALTH et al., Appellants.

[Two Cases.]

Edmund G. Brown, Attorney General, Henry A. Dietz, Assistant Attorney General, and Lee B. Stanton, Deputy Attorney General, for Appellants.

Harold W. Kennedy, County Counsel, and Robert C. Lynch, Deputy County Counsel, for Respondent.

ASHBURN, J.—This is a controversy over certain tuberculosis subsidy payments claimed by the county of Los Angeles to be payable to it under the Tuberculosis Subsidy Law but withheld by the State Department of Public Health. The trial court ruled that such payments, in an aggregate amount of $330,715.69, had been improperly withheld from the county, should be paid over to it, and that future subsidies payable under the statute (Health & Saf. Code, §§ 410-414, 3099-3342) must be computed in accordance with the claim of the county. The application of the statute to partial-pay patients in county hospitals is the focal point of the dispute. The State Department of Public Health and other defendants have appealed.

The above mentioned sections of the Health and Safety Code are a codification of the Tuberculosis Subsidy Law first enacted in 1915 (Stats. 1915, ch. 766, p. 1530). It provided for a state subsidy to any city or county maintaining a tuberculosis ward or hospital of $3.00 a week "for each person in

the active stages of tuberculosis cared for therein at public expense who is unable to pay for his support'' etc. An administrative construction was placed upon this language to the effect that it included no one who could pay all or part of the expense of his keep. The attorney general so ruled (No. 8471 (2-14-33)) and the law was so applied.[1] In 1919 the statute was amended by inserting in section 3 (which later became Health & Saf. Code, § 3300) the sentence: ''Said hospitals shall be allowed to receive pay patients.'' (Stats. 1919, ch. 464, p. 853.) When codification took place in 1939 that sentence remained in the principal section, Number 3300, Health and Safety Code, which now reads: ''Each city, county, city and county, or group of counties may establish and maintain a tuberculosis ward, hospitals, or sanatorium for the treatment of persons suffering from tuberculosis. Each city, county, or city and county that establishes and maintains a tuberculosis ward, hospital, or sanatorium shall receive from the State the sum provided in Section 3301.5 and each county that participates jointly with one or more other counties in the establishment and maintenance of a tuberculosis hospital, ward, or sanatorium shall receive from the State the sum specified in Section 3301.6, for persons suffering from tuberculosis, cared for therein at public expense, who are unable to pay for their support and who have no relatives legally liable and financially able to pay for their support; except that the city, county, or city and county is not entitled to receive this state aid unless the tuberculosis ward, sanatorium, or hospital conforms to the regulations of and is approved by the State Department of Public Health. The hospitals shall be allowed to receive pay patients.'' Section 3301.5 has been amended from time to time by making increases in the subsidy. It now is graduated according to the number of patient days of care per year, ranging from $1.75 to $2.60 per patient day.

---

[1]See 24th Biennial Report of California State Board of Health, pp. 9, 165; 35th Biennial Report, p. 178. These are proper matters for judicial notice (Code Civ. Proc., § 1875, subd. 3; *Sheehan* v. *Vedder*, 108 Cal. App. 419, 425-426 [292 P. 175]; *Livermore* v. *Beal*, 18 Cal.App.2d 535, 540-542 [64 P.2d 987]; *Wood* v. *Kennedy*, 117 Cal.App. 53, 58, 62 [3 P.2d 366]; *ABC Acceptance* v. *Delby*, 150 Cal.App.2d Supp. 826, 828 [310 P.2d 712]; 18 Cal.Jur.2d, § 24, p. 447), and it is the duty of an appellate court to treat them as such regardless of failure or refusal of the trial judge so to do. (*Varcoe* v. *Lee*, 180 Cal. 338, 343 [181 P. 223]; *Rogers* v. *Cady*, 104 Cal. 288, 290 [38 P. 81, 43 Am.St.Rep. 100]; *Ward Mfg. Co.* v. *Miley*, 131 Cal.App.2d 603, 609 [281 P.2d 343].)

The question of whether subsidy should be paid for a part-pay patient remained an uncertain one until the department, under the guidance of the attorney general (7 Ops. Cal. Atty. Gen. 224), undertook to solve it by adopting in August, 1946, a regulation Number 5175, which was renumbered 5198 and became a part of title 17, California Administrative Code. It reads: "A patient who pays any amount toward his support or in whose behalf contributions are received or anticipated, is not eligible for subsidy, unless it is agreed that such contributions will be used to reimburse the state up to the total amount of subsidy paid in behalf of the patient." In 1949 the Los Angeles County counsel advised the board of supervisors that the regulation is at variance with section 3300 of the statute and hence void; also, that the county is entitled to subsidy payments on the following basis: "Full subsidy shall be claimed in every case, including partial pay patients, where the amount of subsidy plus the amount paid for care does not exceed the cost of care. Should payments and subsidy exceed the cost of care, refund to the State of the difference shall be made on subsequent claims." Thereafter, claims for subsidy submitted by the county to the department failed to show all amounts collected from patients. The court found upon the basis of stipulated facts: "[T]hat in the preparation and submission of claims for tuberculosis subsidy, the County of Los Angeles has not, since July 1, 1951, complied with Section 5198 . . . and that in the tuberculosis subsidy claims submitted by the County of Los Angeles for the semiannual periods from July 1, 1947, through June 30, 1951, one hospital prepared its claims in the manner prescribed by Section 5198 . . . while the other three hospitals did not comply with Section 5198. . . ." This text implies, and it seems not to be disputed, that none of the Los Angeles County hospitals complied with section 5198 after July 1, 1951.

Thus it appears that the Board of Health claims all support moneys paid by part-pay patients and refuses to include them in the subsidy calculation unless the county agrees to pay and actually pays over those moneys to the state; failure to do so precludes any subsidy with respect to a part-pay patient. "The position of the appellants, based upon the opinions of the Attorney General over a period of many years, has been that the actual cost to the County has no bearing whatsoever on the amount of the subsidy to be paid to the County; that any amount contributed by the patient must be deducted from the amount of the subsidy, and only the balance paid

to the County as State tuberculosis subsidy." (Opening Br. pp. 15-16.) On the other hand the county, conceding there can be no subsidy to the extent that the statutory aid plus the patient's contribution exceeds the actual cost of his keep, contends that the payment of the subsidy is mandatory and that it is entitled to keep the same in addition to the amount paid by the patient unless the sum of the two items exceeds the actual expense to the county of supporting that patient.

The attorney general rendered an opinion in July, 1951 (18 Ops. Cal. Atty. Gen. 29) upholding the validity of the regulation. The county never made any agreement such as the regulation prescribes and did not comply with the same, but its claims for subsidy were paid in full for the period from July 1, 1947, to June 30, 1951. A post-audit of such claims was made by the controller over a period extending from October, 1952, to July, 1953; it disclosed the county's failure to report on part-pay patients in the manner contemplated by regulation Number 5198, and the discrepancy amounted to $224,540.57 for the period covering July 1, 1947, to December 31, 1951, inclusive. This amount (plus $2,969.89 representing deductions made by reason of matters other than the application of § 5198) was deducted from the county's claim for the six months period of January 1 to June 30, 1953. The appellants currently disallowed a portion of each subsidy claim filed by the county for each semiannual period from July 1, 1951, through December 31, 1953, in the total sum of $106,-175.12, making a grand total deduction of $330,715.69, the amount of the judgment rendered herein. Though these figures seem large, they amount to approximately four per cent of the $7,634,202.71 subsidy apportioned to the county of Los Angeles for the period from July 1, 1947, to December 31, 1953, inclusive.

On August 7, 1953, the county sought a writ of mandate to compel payment of said sum of $330,715.69 to it, but the writ was denied without opinion in the District Court of Appeal. Thereupon two suits (now under review) were filed, one seeking mandate and the other declaratory relief. Judgment favorable to the county was entered in each and the instant appeals were taken therefrom.

The controlling question is whether regulation 5198 is a valid administrative implementation of the statute. Initially it is to be observed that the statute provides a true subsidy, payable to the county, not the patient, the amount

being computed according to the number of patient-hours of care provided to tuberculosis patients at public expense. The generally accepted definition of the term "subsidy" is stated in 83 Corpus Juris Secundum, page 760, as follows: "Something, usually money, donated or given or appropriated by the government through its proper agencies; a grant of funds or property from a government, as of the state or a municipal corporation, to a private person or company to assist in the establishment or support of an enterprise deemed advantageous to the public; a subvention." The title to an amending act of 1939 characterizes section 3300 as "relating to grants in aid for the support and care of persons afflicted with tuberculosis." (Stats. 1939, ch. 1070, p. 2996.) Section 3300 itself refers to the payments as "state aid." The title to the amending statute of 1947 (Stats. 1947, ch. 1000, p. 2266) refers to the subsidy payments as "state grants-in-aid to counties . . . for the treatment and care of persons suffering from tuberculosis."

Counsel for both sides concede, as they must, that one who pays in full for his care is not hospitalized at public expense, and hence cannot be included in the basis for computing the subsidy. It seems evident that the insertion in section 3 of the original statute of the sentence "the hospital shall be allowed to receive pay patients" must have been intended to refer to those who can provide only part of the cost of the keep. Its inclusion in the particular section which commands payment of a subsidy is significant. In said section 3 the quoted sentence follows the provision that the county shall receive $3.00 a week for each person cared for at public expense, and immediately precedes a requirement that the medical superintendent render semiannual statements covering the subject matter. "The medical superintendent of each hospital receiving state aid under this act shall render semiannually to the state bureau of tuberculosis a report under oath showing, for the period covered by the report, (1) the number of patients suffering from tuberculosis cared for therein at public expense, unable to pay therefor, and (2) the number of weeks of treatment of each such patient." (Stats. 1919, ch. 464, p. 853.) In the process of codification this medical report requirement was carried into section 3301.

Ours is but a problem in statutory interpretation, which "has been characterized as a search after the legislative intent as expressed in the language of the statute." (23 Cal.Jur. § 101, p. 719.)

Precedents concerning the meaning of "cared for therein at public expense" and "unable to pay for their support" favor respondent's position rather than that of appellants. See *People* ex rel. *Caldwell* v. *Board of Supervisors,* 45 App. Div. 42 [60 N.Y.S. 1122, 1127], and *In re Hooker's Estate,* 173 Misc. 515 [18 N.Y.S.2d 107, 113], which hold that the word "expense" connotes money actually paid out or necessarily to be spent. In *Madison* v. *City & County of San Francisco,* 106 Cal.App.2d 232 [234 P.2d 995, 236 P.2d 141], the court construed a city ordinance providing inter alia for admission to the San Francisco hospital of "(i) An expectant mother who is unable to pay for her care and the cost of her maintenance." At page 247 the court said: "An expectant mother need not be a pauper to be 'unable to pay for her care,' within the meaning of that expression as used in the state and local codes. . . . The word 'indigent,' when used in connection with admissions to county hospitals, was defined by the court in the Goodall case as including a person 'who has insufficient means to pay for his maintenance in a private hospital after providing for those who legally claim his support.' (11 Cal. App.2d at p. 550.) That, we believe, is the meaning of the expression 'unable to pay for her necessary care' as used by the Legislature in section 204 of the Welfare and Institutions Code." These authorities support the proposition that one is cared for at the public expense to the extent to which the public pays for his support, no more and no less.

It is difficult to discern a legislative intent to exclude part-pay patients from the basis of computation of the subsidy, especially as the pertinent sentence concerning the receiving of pay patients was inserted in the statute for their benefit. It is doubtful whether the provision that the "hospitals shall be allowed to receive pay patients" would be valid if held to apply to those who are able to pay the full cost of their support. Under the ruling in *Goodall* v. *Brite,* 11 Cal.App.2d 540, 545, 548-550, 552 [54 P.2d 510], the affording of hospital facilities to the latter class of patients would amount to a gift of public funds unless limited to emergency cases. At page 551 the court pertinently remarked: "In the administration of public funds the supervisors are acting as trustees and they should so administer those funds as to lighten the taxpayers' burden as much as possible."

To the extent that patients do not pay for their own keep they are manifestly supported at public expense. Counsel for

both sides recognize this fact, but appellants claim a right to receive from the county such partial payments as those patients make,—something which the statute does not suggest. Section 3300 is permissive with respect to a county assuming the state's burden of caring for the indigent (*County of Sacramento* v. *Chambers*, 33 Cal.App. 142, 147 [164 P. 613] ; in this case indigent tuberculosis patients),—''may establish and maintain a tuberculosis ward, hospitals or sanatorium''—but it is mandatory in its declaration that for such facility it ''shall receive from the state the sum provided in § 3301.5.'' The use of ''may'' and ''shall'' in the same section cannot be deemed inadvertent. Section 3301.5 is likewise mandatory, ''the amount of the tuberculosis subsidy . . . shall be the following,'' specifying flat amounts per patient day. We see in this no opening for a construction to the effect that the county will receive only part or none of the subsidy in case the patient pays a portion of his keep or that the state in any event is entitled to receive or take a credit for any of the patients' payments unless they are substantial enough to take him out of the part payment category.

Counsel for appellants place considerable reliance upon this portion of section 3300, ''except that the city, county, or city and county is not entitled to receive this state aid unless the tuberculosis ward, sanatorium, or hospital conforms to the regulations of and is approved by the State Department of Public Health.'' It was stipulated and the court found that Los Angeles County's ''wards and hospitals conform to the regulations of and are approved for tuberculosis subsidy by the State Department of Public Health, except that in the preparation and submission of claims for tuberculosis subsidy the County of Los Angeles has not complied with Section 5198. . . .'' Respondent argues ''that by the language 'regulations of . . . the State Department of Public Health,' the Legislature contemplated that these regulations would cover such matters as adequate physical facilities, including such things as buildings, wards, bed space, laboratory facilities, qualifications and training standards of personnel, and the keeping of records and statistics at these hospitals.

''The specific language of Section 3300 provides that the 'ward, sanitarium or hospital' must conform to the rules in order to qualify for subsidy, clearly contemplating that it is the facilities of these installations which must conform to the rules in order that the institution qualify for subsidy, and does not refer to fiscal matters between the counties and the

State." This impresses us as sound doctrine. The quoted exception plainly carries the inference which respondent attaches to it and it gives no hint of any right in the Department of Public Health or the controller or anyone else to revise, reduce or offset the subsidy which sections 3300 and 3301.5 specifically direct to be paid in prescribed amounts.

This statutory language assumes an existing right of administrative interpretation through the adoption of regulations, but the right springs from the same statute. Section 102, Health and Safety Code, provides: "It shall have power to adopt, promulgate, repeal and amend rules and regulations consistent with law for the protection of the public health." It is *in pari materia* with the following sections of the Government Code. Section 11373 provides: ". . . Each regulation adopted, to be effective, must be within the scope of authority conferred and in accordance with standards prescribed by other provisions of law." Section 11374: "Whenever by the express or implied terms of any statute a state agency has authority to adopt regulations to implement, interpret, make specific or otherwise carry out the provisions of the statute, no regulation adopted is valid or effective unless consistent and not in conflict with the statute and reasonably necessary to effectuate the purpose of the statute. . . ."

■ The administrative agency must confine itself to reasonable interpretation in adopting regulations for administration of its governing statute; if it goes beyond that, the legislative area has been invaded and the regulation counts for nought. See *Boone* v. *Kingsbury*, 206 Cal. 148, 161 [273 P. 797]; *Whitcomb Hotel, Inc.* v. *California Emp. Com.*, 24 Cal. 2d 753, 759 [151 P.2d 233, 155 A.L.R. 405]; *First Industrial Loan Co.* v. *Daugherty*, 26 Cal.2d 545, 550 [159 P.2d 921]; *Williamson* v. *United States*, 207 U.S. 425, 461-462 [28 S.Ct. 163, 52 L.Ed. 278]; *United States* v. *United Verde Copper Co.*, 196 U.S. 207, 215-216 [25 S.Ct. 222, 49 L.Ed. 449]; *United States* v. *George*, 228 U.S. 14, 20 [33 S.Ct. 412, 57 L.Ed. 712].

■ The effect of these statutes and authorities is summarized in *Tolman* v. *Underhill*, 39 Cal.2d 708, 712 [249 P.2d 280]: "It is well settled, however, that laws passed by the Legislature under its general police power will prevail over regulations made by [an agency] with regard to matters which are not exclusively [that agency's] affairs." That is the case here. The Legislature has occupied the field which the regulation attempts to invade (*cf. Department of Social Welfare* v. *Kern County*, 29 Cal.2d 873, 877 [180 P.2d 1]).

■ While interpretive regulations, especially those of long standing, are entitled to considerable weight in determining the meaning of a statute, the ultimate responsibility rests upon the courts, and they are obligated to strike down an administrative rule which attempts to add to or subtract from the statute. "Whatever the force of administrative construction, however, final responsibility for the interpretation of the law rests with the courts. 'At most administrative practice is a weight in the scale, to be considered but not to be inevitably followed. . . . While we are of course bound to weigh seriously such rulings, they are never conclusive.' [Citation.] ■ An administrative officer may not make a rule or regulation that alters or enlarges the terms of a legislative enactment. [Citations.] ■ Moreover, an erroneous administrative construction does not govern the interpretation of a statute, even though the statute is subsequently reenacted without change. [Citations.]" (*Whitcomb Hotel, Inc.* v. *California Emp. Com., supra,* 24 Cal.2d 753, 757-758.) ■ Regulation 5198 was an attempt to extend the rule-making power beyond its legitimate function, a trespass upon the legislative field.

Appellants also argue that the cost to the county of maintaining tuberculosis patients has no relation to the statute, that this is shown by section 3301.7, enacted in 1953, which provides: "It is the intention of the Legislature to adjust from time to time state participation in the care of persons suffering from tuberculosis in accordance with changes in the cost of caring for such patients." Counsel say in their opening brief: "This clearly indicates that the cost of care to the counties is not a matter to be considered in *claiming* the subsidy, but rather is a matter which the Legislature will consider from time to time in fixing the *amount* of the subsidy per patient day." The section was passed as part of a measure increasing the flat subsidy payable to the county and evinces an intent to increase the subsidy to the county as the cost of care goes up, or vice versa. (Since 1915 the amount has been increased from $3.00 per patient per week to $2.60 per patient per day in some instances.) We agree that section 3301.7 does not reflect an intention to have the specified amount of aid altered by the county or the state. But this aids appellants' position in no respect. If it throws any light upon our problem it merely serves to illuminate the fact that the subsidy is a fixed amount which can be changed directly or indirectly by the Legislature only.

██ But, say appellants, this regulation has had legislative approval, for sections 3300 to 3301.6 have been amended in 1947, 1949 and 1953.[2] (Stats. 1947, ch. 1000, p. 2266; Stats. 1949, ch. 1091, p. 1990; Stats. 1949, ch. 1242, p. 2195; Stats. 1953, ch. 28, p. 632, ch. 331, p. 1600, ch. 550, p. 1810, ch. 1513, p. 3175.) Counsel cite *Universal Eng. Co.* v. *State Board of Equalization*, 118 Cal.App.2d 36, 43 [256 P.2d 1059], to the effect that: "It has been held that where an administrative officer or board has adopted a regulation . . . and the Legislature subsequently reenacts the statute without amendment in this regard, the reenactment amounts to a legislative confirmation of the prior existing rules of interpretation."

██ After making this statement the court also said: "In resolving a question as to the import of a statute, a court attaches probative weight to the administrative agency's conclusion as to the meaning of the law, and a court will not ordinarily adopt another construction unless the determination of the agency or board is shown to have been clearly erroneous or unauthorized." The actual decision was that the administrative ruling in question was a reasonable interpretation of the statute. ██ The true rule seems to be that the mere reenactment of the statute without change does not necessarily constitute a legislative approval of an existing regulation. In *Pacific Greyhound Lines* v. *Johnson*, 54 Cal.App.2d 297, 302 [129 P.2d 32], it is said: "Nor does it follow from the fact that the Legislature has amended the act without expressing disapproval of the practice of the board of excluding bridge and ferry tolls from 'gross receipts,' subject to the tax, that it has given legislative approval of such practice. ██ The presumption that a legislature, in amending or reenacting a statute, is familiar with the construction which the courts have put upon terms used therein, is well recognized; but such presumption does not necessarily apply to all constructions or practices adopted by administrative boards, and should not be too generally indulged in the absence of a showing that such construction or practice has been brought to the attention of the Legislature. [Citations.] The rules contended for by appellant are only aids in statutory construction of a legislative enactment which is so general in its terms as to render an interpretative rule or regulation appropriate. They are not conclusive upon the courts." To the same effect, see *Estate of Madison*, 26 Cal.2d 453, 463 [159

---

[2]None of said amendments affects section 3300 except that of 1947.

P.2d 630] ; *Trabue Pittman Corp.* v. *County of Los Angeles,* 29 Cal.2d 385, 399 [175 P.2d 512] ; *Saso* v. *Furtado,* 104 Cal. App.2d 759, 769 [232 P.2d 583] ; *Dahlbeck* v. *Industrial Acc. Com.,* 135 Cal.App.2d 394, 402 [287 P.2d 353]. ▪ The Universal Engineering case, *supra,* is not deemed controlling here for the reason, among others, that the present dispute did not rise to the surface until 1953 when the post-audit was made, and there is nothing to indicate that it did or could have come to the notice of the Legislature or of legislative counsel prior to the 1953 amendments. (The last amendment of § 3300 (prior to 1957) was made in 1947. The reenactment and renumbering of these sections in 1957[3] can throw no light upon this case, for that occurred after the decision in the lower court.)

Appellants' claims of acquiescence and laches on the part of the county and of estoppel against it were ruled adversely to them below and, as the pertinent findings rest upon sufficient substantial evidence, those contentions are not now available to appellants. They require but brief comment.

▪ As to alleged acquiescence by the county in the department's construction of the statute as embodied in rule 5198, it affirmatively appears that the county never made the agreement required by 5198, refused to comply with it, did not furnish the information necessary to its application, and at all times resisted enforcement of that regulation.

▪ Laches and estoppel are so closely akin that they may be treated together. There is no showing of prejudice to the department or anyone else through reliance upon conduct of the county. No moneys were ever paid to it on the basis of any express or implied recognition of 5198 by the county. No moneys were received by it which were not legally due and payable. What appellants now seek is to preclude respondent from resisting a retroactive charge against it predicated upon an erroneous construction of the statute. The rule was not invoked against respondent until July, 1952, when its subsidy claim for the second six months of 1951 was reduced; it sought mandamus in August, 1953, and filed the instant actions in May, 1954. There was no unreasonable delay in this. Even if there had been long delay in attacking the regulation that would not afford ground for a finding of laches or estoppel. Anent this matter the court said in *Del Mar Canning Co.* v. *Payne,* 29 Cal.2d 380, 384 [175 P.2d 231].

[3]See Statutes 1957, chapter 205, page 861.

"No authority is cited to the point that the failure to object to the promulgation of an unconstitutional rule raises an estoppel to attack it afterwards and we are satisfied that the commission has no legal power to place the burden of objecting to a rule at the time of its formulation upon those engaged in the industry under pain of thereafter being estopped to attack its validity."

 We conclude that the trial judge did not err in holding regulation 5198 to be void or in molding relief to plaintiff accordingly.

 Appellants challenge the jurisdiction of the court in each of the instant cases. It is said that they are suits against the state and will not lie because the state has not consented to be sued, citing Constitution, article XX, section 6, and cases which construe it.[4] The defendants in each action are the State Department of Public Health, its director, the members of the State Board of Public Health, the State Controller and the State Treasurer. One of the actions seeks declaratory relief under section 11440, Government Code, which says: "Any interested person may obtain a judicial declaration as to the validity of any regulation by bringing an action for declaratory relief in the superior court in accordance with the provisions of the Code of Civil Procedure. . . ." But the county was uncertain whether said section affords an exclusive remedy or whether it can embrace any relief beyond the mere declaration of validity or invalidity of regulation 5198; so it brought a companion case in mandamus upon the theory that that proceeding would lie if declaratory relief proved to be an inadequate remedy, not broad enough to cover a necessary accounting or to declare rights and duties for the future administration of the statutes with reference to part-pay patients.

It will be noted that each action runs against state officers in their official capacities and seeks primarily a correct disbursement of funds appropriated by the Legislature for tuberculosis subsidies. It also seeks a binding direction to them as to proper disbursement of future subsidy appropriations so long as section 3300 remains unchanged. The state has already acknowledged and declared an obligation to supply the subsidy and the basic question of each suit is the proper interpretation of the statute as to method of disbursing

---

[4]Const., article XX, section 6: "Suits may be brought against the State in such manner and in such courts as shall be directed by law."

the appropriated moneys.[5] Each proceeding is brought against state officers having control over the funds and prays for judgment directing them to perform their statutory duty. Such an action is not one against the state within the purview of the constitutional provision, article XX, section 6. Volume 34, American Jurisprudence, § 123, p. 905: "The immunity of a state and of the United States from suit prevents mandamus against a public officer, board, or commission where it is in reality a proceeding against either sovereign. It is otherwise where the proceeding against the officer is not in effect one against the State or the United States. In such case, the immunity of the sovereign to suit cannot be invoked to defeat the mandamus to compel performance by the officer of duties imposed upon him by law. If the mandamus proceeding in which the state's officers or boards are made respondents cannot subject the state to the payment of money or result in any diminution of its sovereignty, it is not a proceeding against the state, as where all that can possibly flow from the judgment in mandamus is that the public official or official board will be required to refund or release money or property wrongfully detained from the relator."

*County of Los Angeles* v. *Riley*, 20 Cal.2d 652 [128 P.2d 537], was a proceeding in mandamus to compel officers of the state to recalculate credits to which the county claimed to be entitled upon certain reports of aid to needy children and to allow the county a credit as the result of such recalculation. ▮ In rejecting the contention that the proceeding would not lie as the state had not consented to be sued, the court said, at page 662: "The rule is well established in this state that where the action is one simply to compel an officer to perform a duty expressly enjoined upon him by law, it may not be considered a suit against the state. [Citations.] As the present action is not one against the state, the provision of section 688 of the Political Code,[6] requiring the presentation of a claim to the Board of Control as a prerequisite to the institution of suit, has no application to actions of this

---

[5]For appropriations covering the years 1947-1953, see the following statutes: Stats. 1947, Ch. 486, p. 1456, Item 332; Stats. 1948, Ch. 23, p. 112, Item 372; Stats. 1949, Ch. 700, p. 1284, Item 380; Stats. 1949, Ch. 1242, p. 2196, § 2.5; Stats. 1950, Ch. 2, p. 344, Item 485; Stats. 1951, Ch. 1020, p. 2738, Item 371; Stats. 1952, Ch. 3 p. 107, Item 420; Stats. 1953, Ch. 971, p. 2446, Item 401. Most of these Statutes use the following phraseology: "To be expended in accordance with Division 4 of the Health and Safety Code."

[6]Now Government Code, section 16041.

character. The action was properly commenced and petitioner has the legal right to maintain the same.'' To the same effect, see *California Physicians' Service* v. *Garrison*, 28 Cal.2d 790, 800 [172 P.2d 4, 167 A.L.R. 306] ; *U'Ren* v. *State Board of Control*, 31 Cal.App. 6, 12 [159 P. 615] ; *City of Oakland* v. *Brock*, 8 Cal.2d 639, 643 [67 P.2d 344]. As heretofore shown, the object of the present suits is to compel state officers to disburse funds specifically appropriated for tuberculosis subsidies in the manner provided by the statute. This involves no invasion of state sovereignty and does not fall within the rule precluding suits against the state without its consent.

 The foregoing considerations also dispose of the argument that respondent is barred from recovery by failure to exhaust administrative remedies through filing of claims with the controller pursuant to section 16021 and sections 16041-16054 of the Government Code. Those sections relate to claims against the state; as the present claims of the county do not fall in that category there was no necessity of complying with any of the claim sections in question. Indeed the procedure applicable to subsidy payments called for filing of claims therefor with the State Department of Public Health and this was done. The language last above quoted from *County of Los Angeles* v. *Riley, supra*, 20 Cal.2d 652, 662 is here applicable.

 Each action is attacked upon a separate jurisdictional ground. With respect to the declaratory relief action it is argued that section 11440, Government Code, is a consent to suit for the narrow purpose of obtaining a judicial declaration ''as to the validity of any regulation.'' Aside from the fact that it is not a suit against the state at all, it further appears that this is a myopic view of the section. It provides that declaratory relief may be obtained ''by bringing an action for declaratory relief in the superior court in accordance with the provisions of the Code of Civil Procedure.'' This is a reference to section 1060 et seq., Code of Civil Procedure. Section 1060 says that the plaintiff ''may ask for a declaration of rights or duties, either alone or with other relief; and the court may make a binding declaration of such rights or duties, whether or not further relief is or could be claimed at the time.'' Section 1062: ''The remedies provided by this chapter are cumulative, and shall not be construed as restricting any remedy, provisional or otherwise, provided by law for the benefit of any party to such action, and no judg-

ment under this chapter shall preclude any party from obtaining additional relief based upon the same facts.'' If specific consent to suit were necessary this incorporation of section 1060-1062, Code of Civil Procedure, into section 11440 by reference would clearly be sufficient consent to support all phases of the declaratory judgment. But the true aspect of the matter is that validity of administrative regulation is added by section 11440 to the enumeration of subjects for declaratory relief found in section 1060, Code of Civil Procedure. █ It is established law that: ''It is the duty of the court hearing an action for declaratory relief to make a complete determination of the controversy. . . .'' (*Osborne* v. *Security Ins. Co.*, 155 Cal.App.2d 201, 204 [318 P.2d 84].) Accord: *Petersen* v. *Ridenour*, 135 Cal.App.2d 720, 727-728 [287 P.2d 848]; *American Enterprise, Inc.* v. *Van Winkle*, 39 Cal.2d 210, 219 [246 P.2d 935].

█ It is now well settled that no specific consent is requisite to a suit for declaratory relief brought against public officials and designed to adjudge and declare the obligations of their office with respect to a given factual situation. Indeed, the cases go so far as to say that such an action may run against the state itself without the necessity of specific statutory consent. So held in *Hoyt* v. *Board of Civil Service Commrs.*, 21 Cal.2d 399, 403 [132 P.2d 804]; *Lord* v. *Garland*, 27 Cal.2d 840, 852 [168 P.2d 5]; *California Physicians' Service* v. *Garrison, supra*, 28 Cal.2d 790, 800; *Bess* v. *Park*, 132 Cal.App.2d 49, 53 [281 P.2d 556].

█ Objection is made to the inclusion of an injunctive provision in each judgment. After decreeing the invalidity of regulation 5198, requiring an accounting from defendants to plaintiff, awarding judgment for $330,715.69 and directing issuance of warrant for payment of same, the court further declared it to be the duty of defendants: '' (a) To set aside their determination of the amount of tuberculosis subsidy payments and their rejection and disallowance of a part of the plaintiff's claim for each of the subsidy periods from July 1, 1951, to December 31, 1953; (b) To cease and desist from any action whereby there is withheld all or any portion of the tuberculosis subsidy claims of the County of Los Angeles for tuberculosis care furnished to eligible individuals by the County of Los Angeles, except as to amounts in excess of the amount set forth in Section 3301.5 of the Health and Safety Code, which excess amount is determined by the accounting

between the parties to be the amount of $2,969.89; (c) To take that necessary action within each of their particular jurisdictions so that the County of Los Angeles will forthwith be paid the tuberculosis subsidy payments as enjoined upon the respondents by Section 3301.5 of the Health and Safety Code. . . . (d) To hereafter allow and pay in full all claims of the County of Los Angeles for subsidy for tuberculosis care furnished to eligible individuals in the amounts provided in Section 3301.5 of the Health and Safety Code without any deductions made by application of Section 5198, Title 17, California Administrative Code.'' The objection goes to paragraph (b).

It is argued that an injunction is not permissible in a declaratory relief action. The law is to the contrary, as was declared in *Knox* v. *Wolfe*, 73 Cal.App.2d 494, 505 [167 P.2d 3]; *James* v. *Hall*, 88 Cal.App. 528, 535 [264 P. 516]; *Jones* v. *Feichtmeir*, 95 Cal.App.2d 341, 344 [212 P.2d 933]; *Staley* v. *Board of Medical Examiners*, 109 Cal.App.2d 1, 5-6 [240 P.2d 61].

The contention that the ''cease and desist'' paragraph is improper in either judgment because violative of section 526, second subdivision 4, of the Code of Civil Procedure, and Civil Code, section 3423, subdivision 4, is equally untenable. Those sections prohibit the granting of an injunction to prevent the execution of a public statute by officers of the law. But they apply only to valid statutes. A statute or a regulation has no existence if it is invalid and its enforcement may be enjoined. ''The argument, in any case, against the validity of an injunction issued to restrain the execution of a statute, rests, of course, on the premise that the statute in question is a valid exercise of the legislative power. An act of the Legislature which is in conflict with the constitution is no statute at all. It 'is utterly void, and has no force or legal existence. . . .' (*Wheeler* v. *Herbert*, 152 Cal. 224, 228 [92 P. 353].) The provisions of section 3423, subdivision 4, of the Civil Code, 'refer solely to injunctions against the execution of valid statutes.' (*Wheeler* v. *Herbert*, 152 Cal. 224 [92 P. 353].)'' (*Reclamation District* v. *Superior Court*, 171 Cal. 672, 676 [154 P. 845].)

Appellants invoke the statute of limitations, relying on Code of Civil Procedure, section 343, the four-year statute. Counsel argue that rule 5198 was adopted in August, 1946, and the county's suit not brought within four years and hence is barred. Respondent aptly replies: ''In this case the appellants

duly processed and paid all of the County's subsidy claims through the claim for the period of ending June 30, 1951. . . . The first time that Section 5198 was asserted against Los Angeles County was when its subsidy claim for the period July 1, 1951, to December 31, 1951, was reduced by application of this rule on July 2, 1952. . . . This action being for the purpose of enforcing a liability created by statute is governed by the three-year Statute of Limitations provided in Code of Civil Procedure, section 338 [subd.] 1. Since this action was filed May 4, 1954, it was filed well within the three-year statutory period, which commenced July 2, 1952.'' We agree. Neither action was barred by limitation.

▆▆▆ Section 11440, Government Code, having been found broad enough in scope to enable the court to afford to plaintiff all necessary and appropriate relief, it follows that there was no actual need of mandamus and that the familiar test of its applicability, absence of other adequate remedy (*Bartholomae Oil Corp.* v. *Superior Court,* 18 Cal.2d 726, 730 [117 P.2d 674]) is not met at bar. But that is not fatal to the mandamus judgment. ''While originally mandate would not lie if there were other remedies available, that is no longer the situation in California. (See *Sipper* v. *Urban,* 22 Cal.2d 138 [137 P.2d 425].) Therefore, the fact that an action in declaratory relief lies (Gov. Code, § 11440) and there is some indication that in a proper case injunction will lie (see *Brock* v. *Superior Court,* 11 Cal.2d 682 [81 P.2d 931]; *Challenge Cream & Butter Assn.* v. *Parker,* 23 Cal.2d 137 [142 P.2d 737, 149 A.L.R. 1203]; *Agricultural Prorate Com.* v. *Superior Court,* 5 Cal.2d 550 [55 P.2d 495] does not prevent the use of mandate.'' (*Brock* v. *Superior Court,* 109 Cal.App.2d 594, 603 [241 P.2d 283].)

▆▆▆ The record shows that the judgments in the two cases run parallel courses and grant the same relief.[7] The cases were consolidated for purposes of trial only and the court and counsel agreed that separate findings and judgments must be made. The question therefore arises whether appellants are prejudiced by the existence of the mandamus judgment which grants the same relief as the other one. The answer must be a negative. Volume 2, Freeman on Judgments, 5th ed., page 2344, section 1126, states the apposite principle: ''Where two

---

[7]Appellants assert that these are money judgments against the individual public officials. But this is not correct for they are ordered to pay out the moneys in the course of their duties as such public officers.

judgments have been obtained for the same cause of action or debt, the payment or satisfaction of one operates as a satisfaction of the other, except as to costs.'' The rule is stated in substantially the same language in 49 Corpus Juris Secundum, section 575, page 1058. *Cf. Ballentine* v. *Superior Court,* 26 Cal.2d 254, 261 [158 P.2d 14]. Costs were taxed at $6.50 in the declaratory relief judgment, but no costs were taxed in the other case. Hence we have no problem growing out of costs. As payment or other performance of one of the judgments operates as a satisfaction *pro tanto* of the other judgment, appellants can suffer no prejudice from the existence of both decrees and we conclude that the duplication does not require or warrant a reversal of either judgment.

Other points raised in support of the appeal have been examined and found without merit. They require no further discussion.

The judgment in each case is affirmed.

Fox, P. J., and Kincaid, J. pro tem.,* concurred.

A petition for a rehearing was denied April 11, 1958, and appellants' petition for a hearing by the Supreme Court was denied May 16, 1958. Gibson, C. J., Traynor, J., and Spence, J., were of the opinion that the petition should be granted.

---

*Assigned by Chairman of Judicial Council.