[No. B083583. Second Dist., Div. Three. Nov. 8, 1995.]

COUNTY OF LOS ANGELES et al., Plaintiffs and Appellants, v. LINDA S. McMAHON, as Director, etc., et al., Defendants and Respondents.

COUNSEL

De Witt W. Clinton, County Counsel, Roberta M. Fesler, Assistant County Counsel, Ada Treiger, Deputy County Counsel, Barger & Wolen, Royal F. Oakes, Richard G. De La Mora and J. Steven Bingman for Plaintiffs and Appellants.

Daniel E. Lungren, Attorney General, Charlton G. Holland III, Assistant Attorney General, John H. Sanders and Wendi A. Horwitz, Deputy Attorneys General, for Defendants and Respondents.

## OPINION

**ALDRICH, J.—**

### INTRODUCTION

This appeal raises the issue of the validity of an administrative regulation of the Department of Social Services to limit reimbursement to the County of Los Angeles for emergency shelter costs for abused children. The County of Los Angeles contends the regulation which places a time limitation on social services provided at MacLaren Children's Center is in excess of the department's authority and that it is futile to attempt to exhaust administrative remedies for relief from the departments audits.

Plaintiff and appellant County of Los Angeles (County) appeals from the judgment entered following the grant of the motion for summary judgment of defendant and respondent Linda S. McMahon, Director (Director) of the Department of Social Services of the Health and Welfare Agency of the State of California (Department) on the County's causes of action for declaratory and injunctive relief. The County challenged the Department's authority to adopt and apply regulation 30-158.3, an auditing rule which placed a time limitation on the state's reimbursement for emergency shelter care costs at MacLaren Children's Center (MacLaren) to the County's claims for reimbursement for fiscal years 1984-1985 through 1992-1993. The County also challenged the Department's inclusion of certain staff expenses for children treatment counselors (CTC's) as "operating costs" subject to the limitation rather than as social worker salaries and benefits which constitute "service costs" exempt from any limitation.

The trial court held that the regulation which limited the reimbursable costs at MacLaren was valid. It also concluded the County had failed to

exhaust its administrative remedies in regard to the accounting and equitable issues raised by the complaint in regard to the post-1984 fiscal year audits.

We agree and therefore affirm the judgment.

### FACTUAL AND PROCEDURAL BACKGROUND

MacLaren is a County residential facility which provides emergency shelter care to children who are threatened with harm or abuse. It is operated with county, state and federal funds. The state receives reimbursement from the federal government for child welfare services required by the Social Security Act, including emergency shelter care, and in turn reimburses counties for a portion of the children protective services they provide.

*The Audits for Fiscal Years 1976-1977 Through 1983-1984.*

The Department disallowed the County reimbursement of a portion of the operating costs at MacLaren for fiscal years 1976-1977 through 1983-1984. The total amount of audit exceptions for this period was $42,060,684.[1] The Department based the exceptions on a federal policy limiting reimbursement of all costs for emergency shelter care to 14 days. While the County claimed entitlement to the costs of all the staff at MacLaren, the Department limited reimbursement, except for social workers, to the first 14 days of emergency shelter care given to an individual child. The Department's auditing policy was set forth in section 30-104.72 of the Department's manual, promulgated in 1969 and 1970. Pursuant to the policy, the Department did not allow reimbursement of claims for "operating costs" at MacLaren for more than 14 days per occupant. Social service costs were exempt from this limitation and included social worker salaries. The County claimed the salaries for CTC's were social services as well. However, the Department considered the CTC's as not social workers, and therefore subject to the 14-day limitation along with other operating costs.

The County contends the Department relied upon an unwritten "concept" based upon a former regulation 30-104.72, which became obsolete on July 1,

---

[1] The Department explains that of the $42 million exception, $20.8 million represents allowable costs. The exception was originally taken as a total line item exception and included both allowable and unallowable costs. The claims auditors identified the costs associated with the first 14 days of care and allowed only those costs. This resulted in a net total exception of $21.3 million, which includes federal, state and county shares. Of the $21.3 million, $5.3 million was the share to be paid by the County and the remaining $15.9 million represented the federal and state share of the ineligible costs and the County's liability. During four years of the early audit period, the County contributed $4.8 million additional funds to MacLaren's budget, which reduced the County's liability to about $11 million, of which $5.2 million was due the federal government and $5.8 million the state.

1977, to apply this same limitation to subsequent claims for reimbursement. Because the trial court issued a writ of mandate directing the Director to set aside the final administrative decision for the fiscal years 1976-1977 through 1983-1984, that portion of the judgment is not subject to the County's appeal, and the grant of the writ is not before us. Therefore, we do not address the validity of the regulation or the propriety of the audits for that period. We note, however, that the trial court held that the regulation was valid and the allocation of costs by the Department was correct.

The County initiated appeal procedures to contest the Department's audits but did not receive an administrative hearing until 1990 for fiscal years 1976-1977 through 1983-1984. The hearing officer concluded that the Department's audits were correct and that although the Department had delayed hearings, the County was not prejudiced by the delays. Because the County did not reimburse the Department during this period, the County continued to have the use of the disputed amounts.

On November 28, 1990, the County filed a petition for writ of mandate and complaint for declaratory and injunctive relief. The writ pursuant to Code of Civil Procedure section 1094.5, challenged the administrative proceedings which upheld the validity of a regulation, sometimes referred to as the "14 day concept," which provided a basis for audit exceptions taken by the Department for reimbursement of MacLaren costs for fiscal years 1976 through 1984. The complaint sought a declaration that the regulation was invalid and an injunction enjoining the Department from collecting future claims based on such a policy or regulation for fiscal years 1984-1985 through 1987-1988 and 1988-1989 through 1992-1993.

Upon the hearing on the County's writ petition and motion for summary judgment on the complaint, on February 16, 1993, the trial court (Judge O'Brien) denied summary judgment but granted the County's petition for writ of mandate based upon the equitable grounds of laches. In doing so, the trial court upheld the validity of the challenged "14 day concept" used by the Department in determining reimbursable amounts. In its statement of decision, the trial court observed the state rule arose from the federal government's policy limiting funds for non-social-work emergency services to 14 days, and that the Department's manual of policy and procedures included an articulated 14-day limitation, promulgated and distributed on October 29, 1970. The trial court also held that the emergency care services provided by "ancillary emergency care people (or 'treatment counselors') clearly do not meet the requirements of 'casework staff.'"

The trial court found laches was present ". . . by the lackadaisical way respondent [the Department] has treated the procedural aspects of the audits

and the appeals and hearings and timeliness of the decisions." The Department did not schedule an audit appeal hearing until almost seven years after the first request on September 24, 1982, which would have covered five of the seven-year audits.

As to the causes of action for declaratory relief and an injunction, the trial court found that all the facts necessary to rule were before the court and were undisputed. Because the 14-day concept was valid and could be applied to future audits, the County's motion for judgment was denied. The writ commanding the Director to set aside the final administrative decision applicable to fiscal years 1976-1977 through 1983-1984 was issued on July 26, 1993.

*The 1984-1985 Through 1992-1993 Audits*

The audits of fiscal years 1976-1977 through 1987-1988 were conducted at the close of each fiscal year, following reimbursement of the County's claims. Thus, the audit exceptions meant the County had been overpaid on its claims and would have to reimburse the Department for these overpayments. The trial court's decision on the writ of mandate vacated the Department's ruling regarding reimbursement for fiscal years 1976-1977 through 1983-1984.

The Department began quarterly "office" audits of the County's claim prior to certification for payment, beginning with fiscal year 1988-1989. The Department adjusted the County's quarterly claim by deleting the disputed extended care costs. The Department thus withheld reimbursement of these costs in advance. The County contends that since September 1988, it has been forced to pay for extended emergency shelter care amounting to over $40 million without administrative remedy, despite the County's protests, appeals and requests for hearings.

The trial court (Judge Doi Todd) addressed the causes of action for declaratory relief and injunction upon the parties' cross-motions for summary judgment.

On November 18, 1993, the trial court granted the Department's motion and denied the County's motion on the ground that regulation applicable to the audits of the post-1984 fiscal years, regulation 30-158, was valid. Judge Doi Todd held that the Director had the authority to establish by regulation the time periods for which emergency shelter care be funded and that regulation 30-158 established both a 15-day and 30-day funding limitation. In regard to the issue of the designation of the CTC's as social workers, the

trial court held the County had not exhausted the administrative remedies available. An order granting the Department's motion for summary judgment was filed on December 16, 1993. Judgment was entered on March 9, 1994.

In the meantime, the County had filed a petition for a writ in the Court of Appeal. This division issued an order to show cause but subsequently issued an order discharging this order and dismissing the petition without prejudice. County sought review of the discharge order. The petition for rehearing was denied, and County filed a notice of appeal of the judgment which had finally been entered.

## CONTENTIONS

County contends: regulation 30-158.3 was invalid and void because it conflicted with Welfare and Institutions Code section 16500 et seq.,[2] exceeded the Director's authority and was unconstitutional. County contends summary judgment was an abuse of discretion because determinative issues remain to be resolved, namely the CTC and laches/estoppel issues. County contends these issues may be decided on appeal. Also, County contends administrative remedies were exhausted and are now futile.

The Department contends: regulation 30-158 is a valid regulation, within the Department's authority to promulgate, properly adopted pursuant to APA requirements and consistent with applicable statutes. The trial court did not abuse its discretion in granting summary judgment; administrative remedies were not exhausted as to the CTC's and equity issues and such remedies are not futile. The CTC issue and the equity issue were not decided below and therefore are not before this court on appeal. If administrative remedies need not be exhausted, the matter should be remanded to the trial court to determine these factual issues.

## DISCUSSION

1. *Regulation 30-158 is a valid, properly promulgated regulation of the Department, applicable to the County's audits for fiscal years 1984-1985 through 1992-1993.*

a. *Statutory Provisions*

The state receives federal funding for children's emergency shelter care through block grants under the Social Security Act. The Legislature appropriates money for the child welfare services (CWS) program for the entire

---

[2]All further statutory references herein are to the Welfare and Institutions Code unless otherwise indicated.

state. From this annual appropriation, the Department provides each county an amount which is their county share or "match requirement" for the purposes of funding the allowable costs for all CWS programs in that county under section 10100. The remaining share consists of federal and state funds which are advanced to the counties on a monthly basis for social services, including emergency shelter care. (§ 15152.) The County submits expense claims to the Department on a quarterly basis, so that future monthly advances can be adjusted. (§ 15153.)

In 1968, section 16500 et seq. was adopted, which ordered the state, through the Department and the county welfare departments, to establish a public system of statewide child welfare services. "Child welfare services" are defined as public social services which are directed at accomplishing certain purposes, including "assuring adequate care of children away from their homes, in cases where the child cannot be returned home or cannot be placed for adoption." (§ 16501, subd. (a).) As relevant to this appeal, child welfare services may include, but are not limited to, case management, counseling, and emergency shelter care. (§ 16501, subd. (a)(1).) "Emergency shelter care" is defined as "emergency shelter provided to children who have been removed pursuant to Section 300 from their parent or parents or their guardian or guardians." (§ 16501, subd. (a)(3).)

At the time of the first audit period challenged by the County, fiscal year 1976-1977, there was no express statutory provision for regulations setting time limitations upon emergency shelter care. In 1991, the following provision was added to section 16501: "The department may establish, by regulation, the time periods for which emergency shelter care shall be funded." (§ 16501, subd. (a)(3).)[3] The Department points out that during the amendment process, the County Welfare Directors Association requested that the 15-day limitation be extended to 30 days and that it be specifically included in the statute. Because the Department wanted the ability to reinstate the 15-day limitation if the counties abused the 30-day limitation, it agreed to the clarifying provision in the statute with the 30-day limitation put into the new regulation, 31-415.1. (Cal. Dept. Social Services, rulemaking file for Sen. Bill No. 1125 (1991-1992 Reg. Sess.).) From its inception, the Department was authorized and directed to adopt needed regulations. (§ 10501.)

Sections 10100 and 10101 set forth the counties financial obligations for the social services programs defined in section 16501. The counties are required to provide matching funds for county-administered social services programs defined by the state. The amount specified for the County for the 1982-1983 fiscal year was $17,821,660. (§ 10100.) Section 10101 limited a

[3]Senate Bill No. 1125 (Stats. 1991, ch. 1203, § 10, eff. Jan. 1, 1992).

county share to 25 percent of "actual county expenditures for each year," and provided for annual increases in the county shares, as specified in section 10100, ". . . by the percentage cost-of-living increase contained in the Budget Act for county administered social services or shall be 25 percent of expenditures by the county in that year for county administered social services, whichever is less." Section 10100 was repealed in 1991, and replaced with a provision for 1991-1992 fiscal year and each fiscal year thereafter, which provided, ". . . the state's share of the costs of the child welfare program shall be 70 percent of the actual nonfederal expenditures for the program or the amount appropriated by the Legislature for that purpose, whichever is less." (Stats. 1991, ch. 91, § 15, eff. June 30, 1991.) The county's cost of matching was thus increased to 30 percent. In addition, the Legislature directed that federal funds received under the Social Security Act and appropriated for child welfare services were to be considered part of the state share of cost and not part of the federal expenditures for this program. Section 10102 provides that the Department "shall not allocate funds to cover county cost overruns which result from county failure to meet requirements of the plan."

Sections 10553, subdivision (e) and 10554 provide the Director of the Department with authority to adopt regulations, and sections 16501 and 10604, subdivision (b) require the counties to comply with regulations promulgated by the Department. The statute specifically states that the Department's regulations need not be printed in the California Administrative Code (now the California Code of Regulations) or California Administrative Register (now the California Regulations Notice Register) if they are included in the publications of the Department. (§ 10554.)

b. *Regulation 30-158*

Regulation 30-158 was in effect during the fiscal years subject to this appeal. It provided, in pertinent part:

".1 Emergency shelter care services shall be provided when a child has been taken into custody following his/her voluntary or involuntary removal.

". . . . . . . . . . . . . . . . . . . . . . .

".2 Provision of emergency shelter care services shall not exceed 15 calendar days in any one episode except under the following circumstances:

".21 The county welfare department shall be permitted to extend emergency shelter care services beyond 15 calendar days only if documented

justification in the case record has been reviewed and approved in writing by an administrative official higher than a first-level supervisor.

" .3 In no event shall federal and/or state funds appropriated for the purpose of providing any of the child welfare services specified in Division 30 be provided for emergency shelter care services beyond 30 calendar days in any one episode or in a 12-month period.

". . . . . . . . . . . . . . . . . . . . . . . . . . . .

".32 The county welfare department shall be permitted to provide emergency shelter care services beyond 30 calendar days only when the case record documents the existence of one of the following circumstances:

".321 Emergency shelter care services are necessary to meet the continuing protective needs of the child, and there is no other location wherein these protective needs can be met.

".322 The child has special needs which render him/her extremely difficult to place, and there is no other location available wherein these special needs can be met."

The final statement of reasons for adoption of regulation 30-158 in 1983, stated, "These sections have been adopted to specify the circumstances under which emergency shelter care services are to be available when a child has been taken into custody following his/her voluntary or involuntary removal. These requirements are necessary to implement the provisions of Welfare and Institutions Code Sections 305, 306, 16501, and 16504.1; and are consistent with both [federal and professional] standards." In regard to 30-158.3 through .32, the statement states, "These sections have been adopted to clarify that, while federal and state child welfare services monies cannot be used to fund emergency shelter care services beyond 30 days, county-only funds may be used to provide such services under specified circumstances. . . ."

c. *The County's Challenge*

■ The County concedes that regulation 30-158 was adopted pursuant to the requirements of the Administrative Procedures Act but attacks its validity on substantive grounds.

The County challenges the Director's authority to promulgate regulation 30-158, contending the limitation conflicts with statutory requirements. The

state is required to "support children's services" (§ 16500) including emergency shelter care and provide "adequate" care (§ 16501, subd. (a)) of children removed from their parents' custody. By capping the reimbursement of costs of emergency shelter services to a limited time period, the County bears more than the designated 25 or 30 percent of the total shelter costs, the County argues, and, therefore, the regulation conflicts with the statutory mandates. The County's approach ignores the power of the state through the Department to define the social welfare programs for which reimbursement is allowed.

The time limitation on reimbursement for emergency shelter care has existed for an extended period, having arisen from federal policy at the inception of the program. In response to an inquiry by the Department, the federal Department of Health, Education, and Welfare, in a letter dated July 18, 1969, stated that 42 Code of Federal Regulations section 220.61(e)(D) authorized federal reimbursement for the services of caseworkers who refer children to shelter care but that other costs such as the staff of the facility, houseparents, cooks, etc., are not subject to service matching. In another letter dated August 8, 1969, the agency confirmed that the federal regulations precluded federal financial participation for the maintenance cost of children living in public care institutions. The federal agency did not deny all federal funds for "non-social workers" but limited the number of days the state could claim such costs. In a letter dated November 10, 1969, the Department of Health, Education and Welfare set forth this policy: "Protective services involves [sic] immediate action to safeguard a child from a hazardous situation arising from a condition of neglect, abuse and/or exploitation. On occasion such action might require some type of short-term emergency care in another living situation. An emergency placement of this nature will be considered as a service up to a maximum of 14 days, and will be subject to the prevailing rate of service matching provided the subsistence component of the emergency care is an incidental part of a broad range of protective services."

The record demonstrates that the emergency shelter care program was intended to provide short-term, emergency facilities for children removed from their homes or families. This is one program within the broader public system of child welfare services financed in part by the federal government. (§ 16500.)

The County's argument that any limitation upon the measure of services provided at MacLaren conflicts with statutory provisions is meritless. The County emphasizes the word "support" in the Legislature's statement of

intent and direction to counties and suggests that any limitation on the length of emergency shelter care must be inconsistent with the overall cap set by the state because it could result in the County paying more than its mandated percentage. The County argues that "adequate" care for children removed from their parents' custody, required by section 16501, subdivision (a), includes extended shelter care, especially in cases of hard-to-place children.

The County's approach assumes the County, not the state or the Department, determines which programs and expenditures are appropriate and it is its total expenditure which is subject to the reimbursement provisions. The funds which are at issue, however, originate with the state and the federal government and are distributed to the counties based upon the Department's determination of the proper allocation. The state sets the requirements and the procedures for the program in the Welfare and Institutions Code to comply with requirements for federal funds.

The challenged regulation limiting the reimbursable expenses for temporary emergency shelter services is consistent with the statutes and policies expressed therein. (*Miller* v. *Woods* (1983) 148 Cal.App.3d 862, 876 [196 Cal.Rptr. 69].)

The cases upon which the County relies are distinguishable. In *Miller* v. *Woods, supra,* 148 Cal.App.3d 862, the challenged regulation of the Department denied payment to "housemates" for "protective supervision" services rendered to totally disabled persons. The regulation "in effect volunteers the service of live-in housemates." (*Id.* at p. 867.) This regulation was inconsistent with the specific changes made by the Legislature in modifying the statutory provisions concerning the responsibility of relatives for such services. The amendments indicated a legislative intent to volunteer only the services of a parent of minor children or a spouse, both classes of persons having a legal duty to support. The regulation went beyond these two specifically defined groups and was thus invalid as beyond the agency's power to promulgate. (*Id.* at p. 877.)

*County of L. A.* v. *State Dept. Pub. Health* (1958) 158 Cal.App.2d 425 [322 P.2d 968], concerned the County's challenge to a regulation which denied a subsidy for the hospital care of tuberculosis patients who paid any amount toward their own care or who received contributions for their support (partial-pay patients). The court held this was in direct conflict with the statute which provided a state subsidy " 'for each person in the active stages of tuberculosis cared for [in a county maintained hospital] at public expense who is unable to pay for his support,' " entitled the county that established

tuberculosis hospitals to a subsidy for each patient, including partial-pay patients. (*Id.* at pp. 430-431.) Carefully examining the pertinent statutes, which included mandatory language concerning the amount and payment of the subsidy, the court concluded, "We see in this no opening for a construction to the effect that the county will receive only part or none of the subsidy in case the patient pays a portion of his keep or that the state in any event is entitled to receive or take a credit for any of the patients' payments unless they are substantial enough to take him out of the part payment category." (*Id.* at p. 436.).

Regulation 30-158 is consistent with and does not conflict with the statutes providing for emergency shelter care. There is no statute requiring the provision of child welfare services at emergency shelters on a limitless basis. Indeed, emergency care is inherently temporary, not the permanent plan otherwise sought under these programs. Also, inasmuch as the County has not pursued required procedures to challenge the regulation as mandating a new program or higher level of service, County's challenge under California Constitution, article XIII, section 6, must fall. (*Kinlaw* v. *State of California* (1991) 54 Cal.3d 326, 333 [285 Cal.Rptr. 66, 814 P.2d 1308].)

### 2. *The remaining issues cannot be decided on this appeal.*

■ The County seeks a declaration that no valid, regulatory authority existed for the reimbursement cut-off and that County should be reimbursed for all "personal service" expenses incurred in connection with the operation of MacLaren for all fiscal years extending from July 1, 1984, through the present. County also seeks an injunction restraining the Department from denying the County reimbursement for "personal service" expenses incurred in providing emergency shelter care to children at MacLaren. Although we declare the regulation valid, and therefore declare the County's challenge meritless, we do not address the related remaining issues concerning the application of the rule to the subject audits.

The trial court properly ruled that the County has failed to exhaust its administrative remedies in regard to the issues raised by the complaint. (*Abelleira* v. *District Court of Appeal* (1941) 17 Cal.2d 280, 293 [109 P.2d 942, 132 A.L.R. 715].) There have been no administrative hearings on the audits of the fiscal years at issue on appeal and although the initial audits applied the rules in a manner contrary to the County's view, there has been no final determination for the fiscal years in question. Also, at this stage, the trial court did not address the issue of laches but ordered further administrative action. It is premature for this court to address these issues on this appeal.

The County contends that the issues raised are issues of law which need not be adjudicated before review. The County is mistaken. Although the issues necessarily include interpretations of statutes and regulations, they also require factual determinations regarding the rendering of emergency shelter services at MacLaren Hall in particular, including the number of personnel involved, the costs of these services and the nature of the various different tasks performed.

It is unclear how the Department will interpret and apply the applicable regulations upon review of the audits and in light of the judicial musings. There has been considerable controversy between the parties below and on appeal as to whether CTC's should be treated as personal costs as opposed to operating costs. Yet, it has also been suggested by counsel for the Department at oral argument that regulation 30-158 could be applied to limit *all* emergency shelter costs to the 15/30-day limitation, social work costs as well as operating costs.

In the absence of a record of findings based upon evidence this court cannot determine the appropriateness of the Department's past decisions or anticipate its actions upon its review. The question of which costs are attributable to "personnel" and which to "operating costs" cannot be answered in the abstract but must be applied to the particular persons and services or tasks performed during the relevant audit periods.

Also, the record is deficient on the issue of laches or estoppel on the later audits. Since the judgment below, there appears to have been a legitimate and authorized basis for staying administrative hearings on the subject audits. Subsequent to the grant of the petition for writ of mandate, the Department scheduled a hearing on the appeal of the audit adjustments to the post-1984 fiscal years pursuant to the trial court's order. This hearing has been continued pending conclusion of the appellate process. Unlike the situation in regard to the earlier fiscal years, it cannot be concluded on the record before us that the Department is guilty of laches and cannot apply its valid regulation in an expeditious manner to the remaining audit appeals. The County may raise the issue of laches in appropriate subsequent proceedings below.

## Disposition

Judgment affirmed and the matter remanded. The trial court is directed to order the Department to hear the County's outstanding appeals within 60

days of the filing of this opinion. The Department is awarded costs on appeal.

Croskey, Acting P. J., and Kitching, J., concurred.